Docket No. 86408–Agenda 7–March 2000.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DANIEL J. EDWARDS, Appellant.

Opinion filed January 29, 2001.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Daniel J. Edwards, brings this appeal from an order of the circuit court of Kankakee County dismissing, without an evidentiary hearing, his amended post-conviction petition. Because the defendant received the death sentence for the underlying first degree murder conviction, the present appeal lies directly to this court. 134 Ill. 2d R. 651(a).

Following a jury trial in the circuit court of Kankakee County, the defendant was convicted of first degree murder and aggravated kidnapping. The same jury found the defendant eligible for the death penalty because of his commission of first degree murder during the course of another felony, aggravated kidnapping. See Ill. Rev. Stat. 1985, ch. 38, par. 9–1(b)(6). At the conclusion of the sentencing hearing, the jury determined that there were no mitigating circumstances sufficient to preclude a sentence of death, and the trial court therefore imposed the death sentence for the conviction for first degree murder. On direct appeal, this court affirmed the defendant’s convictions and death sentence. 
People v. Edwards
, 144 Ill. 2d 108 (1991). The United States Supreme Court denied the defendant’s petition for a writ of 
certiorari. Edwards v. Illinois
, 504 U.S. 942, 119 L. Ed. 2d 204, 112 S. Ct. 2278 (1992).

The defendant commenced the present action for post-conviction relief in the circuit court of Kankakee County in November 1992. With the assistance of counsel, the defendant filed an initial and later an amended post-conviction petition, raising a number of challenges to the trial and sentencing proceedings. The State moved to dismiss the defendant’s amended petition. The circuit court granted the State’s motion and dismissed the amended petition without an evidentiary hearing. This appeal followed. 134 Ill. 2d R. 651(a).

We will briefly summarize the evidence presented at trial. The defendant was charged with first degree murder and aggravated kidnapping for the abduction and death of Stephen Small of Kankakee. Small had been buried alive in a wooden box, where he was being held for payment of a $1 million ransom.

Around 12:30 a.m. on September 2, 1987, someone claiming to be a Kankakee police officer called the Small home and told Stephen Small that a burglary had occurred at his office. Small got dressed and left the house. Around 3:30 that morning someone called the Small residence and told Stephen’s wife, Nancy, “We have your husband.” Nancy then heard her husband say that he had been handcuffed inside a box underground. Small told his wife to obtain $1 million in cash. The caller directed Mrs. Small not to report the matter to the police.

The matter was reported to the authorities, however, and devices were connected to the Smalls’ telephone line to record incoming calls and to determine their origins. At 5:03 that afternoon, the same person called again, asking Mrs. Small how much money had been collected. This call was placed from a telephone located at a Phillips 66 gas station in Aroma Park. The defendant was seen there at that time, in the company of a blonde-haired woman.

At 5:40 p.m., Jean Alice Small, Stephen Small’s aunt, telephoned the Small residence to tell them of a call she had just received. Jean said that the caller had told her that he knew that Nancy Small’s telephone was tapped. After telling Jean that the victim was buried, the caller threatened to kill Jean’s husband.

Nancy Small received another telephone call from the kidnapper at 11:28 that night. This call originated from a telephone at a Sunoco station in Aroma Park, where an FBI agent saw a white male at a telephone, and a blonde-haired woman in a car that was later identified as belonging to Nancy Rish, the defendant’s girlfriend; Rish had blonde hair. The caller played a tape recording of Stephen Small’s voice. On the tape, Stephen provided instructions for delivering the ransom. After audio enhancement, a voice in the background could be heard threatening Small.

Nancy Small received one more telephone call from the kidnapper, at 11:46 that night. The call was placed from a Marathon service station in Kankakee. The caller accused Nancy of having notified the police and refused her offer of the ransom. Minutes later, at 11:50 p.m., an Illinois state police officer saw Rish’s car, with its trunk partly open, driving from Kankakee toward Aroma Park.

Law enforcement officers then placed the defendant’s home under surveillance. They saw a dark-colored Buick, with its trunk partly open, arrive at the house in Bourbonnais where the defendant and Rish lived. The defendant and a white woman with blonde hair left the car and went inside.

Officers carried out a search of the residence later that morning, on September 3, and the defendant was arrested at that time. Later that day, the defendant led law enforcement officers to the site where the victim was buried. There, officers dug up a wooden box and found the victim’s body inside. The box measured about six feet long and three feet wide, and was constructed of plywood.

A medical examiner later determined that the victim died of asphyxiation caused by suffocation. The medical examiner believed that the victim would not have survived more than three or four hours inside the enclosed box. The medical examiner noted that the pipe extending from the box into the open air was too long for its diameter to serve as an adequate air-exchange system.

The State presented other evidence connecting the defendant to these offenses. On the night of the victim’s disappearance, around midnight, a neighbor of the defendant heard the defendant say, “Let’s go, let’s hit it,” get into his car, and drive off. Also, two neighbors of the Small family saw the defendant’s van, or one similar to it, parked in their neighborhood after midnight on September 2. One neighbor also noticed a mid-sized car at that time, heard two car doors slam, and saw the car and the defendant’s van drive away with their lights off.

Several witnesses saw the defendant constructing a wooden box in his garage during summer 1987, preceding the offenses here. The defendant gave various explanations for the project, saying that it would be used for a lemonade stand, or by his brother for transporting things, or at his brother’s pool in Florida. A neighbor of the Smalls had seen a white van similar to the defendant’s van driving through an alley next to the Small’s home about 10 times that summer. While the defendant and Rish were visiting a boat store that summer, the defendant saw Stephen Small leaving the store in a sports car; the defendant was heard to say, “Boy, it sure would be nice to afford stuff like that.”

The search of the defendant’s residence at the time of his arrest turned up a Kankakee telephone book with the name “Small” circled. The defendant’s boots were found behind a washer and dryer at the residence, and soil on the boots matched a sample from the location where the box was buried. Soil in the defendant’s van also matched the sample. White caulking material on gloves found in the defendant’s trash had the same chemical composition as the caulking material used to fill in the seams of the wooden box in which the victim had been buried. The defendant’s fingerprints were found on PVC pipe and duct tape recovered from the box.

A person who owed the defendant money had had a pair of handcuffs stolen from him, and the same pair was later discovered on the victim. Another person who owed the defendant money had had a gun stolen, and it was found by investigators in the countryside near Aroma Park. The defendant purchased a battery that was found in the wooden box. Bolt cutters belonging to a company owned by the defendant’s brother were found at a point between where the box was uncovered and where the victim’s car was found, and they could have been the implement used to cut the chain connecting the handcuffs on the victim’s wrists.

At the close of evidence, the jury found the defendant guilty of first degree murder and aggravated kidnapping. A capital sentencing hearing was then conducted. At the first stage of the hearing, the jury found the defendant eligible for the death penalty because of his commission of murder during the course of another felony, aggravated kidnapping. See Ill. Rev. Stat. 1985, ch. 38, par. 9–1(b)(6). At the second stage of the hearing, the parties presented evidence in aggravation and mitigation. At the conclusion of the hearing, the jury determined that there were no mitigating circumstances sufficient to preclude a sentence of death. The trial judge accordingly sentenced the defendant to death for the conviction for first degree murder.

I

The Post-Conviction Hearing Act (725 ILCS 5/122–1 through 122–7 (West 1994)) provides a method by which a defendant may challenge a conviction or sentence for violations of federal or state constitutional rights. 
People v. Tenner
, 175 Ill. 2d 372, 377 (1997); 
People v. Thompkins
, 161 Ill. 2d 148, 157 (1994). An action for post-conviction relief is a collateral proceeding rather than an appeal from the underlying judgment. 
People v. Williams
, 186 Ill. 2d 55, 62 (1999). To be entitled to post-conviction relief, a defendant must demonstrate a substantial deprivation of federal or state constitutional rights in the proceedings that led to the judgment being challenged. 725 ILCS 5/122–1 (West 1994); 
People v. Morgan
, 187 Ill. 2d 500, 528 (1999). Principles of 
res judicata 
and waiver narrow the range of issues available to a post-conviction petitioner “to constitutional matters which have not been, and could not have been, previously adjudicated.” 
People v. Winsett
, 153 Ill. 2d 335, 346 (1992). Accordingly, rulings on issues that were previously raised at trial or on direct appeal are 
res judicata
, and issues that could have been raised in the earlier proceedings, but were not, will ordinarily be deemed waived. 
People v. Tenner
, 175 Ill. 2d 372, 378 (1997); 
People v. Coleman
, 168 Ill. 2d 509, 522 (1995).

The defendant raises a number of contentions in this appeal, arguing generally that the post-conviction court erred in dismissing the petition without an evidentiary hearing. A court considering a post-conviction appeal will conduct a 
de novo 
review of a petition that has been dismissed without an evidentiary hearing. 
People v. Coleman
, 183 Ill. 2d 366, 389 (1998). With several exceptions, we will discuss these issues in the same sequence in which the defendant has presented them in his brief before this court.

II

The defendant argues that the affidavit submitted by Master Sergeant William Willis of the Illinois State Police in support of the search warrant was defective in various respects. On direct appeal, this court considered a number of the same or related contentions involving the affidavit and the issuance of the search warrant. 
Edwards
, 144 Ill. 2d at 129-33. At that time, the court held that various misstatements in the affidavit would not have affected the judge’s decision to issue the requested warrant. The defendant renews here a number of the same allegations, and supplements them with an additional circumstance that he believes entitles him to an evidentiary hearing. Specifically, the defendant argues that Willis should have stated in the affidavit that Mrs. Small heard a tape recording of her husband’s voice, rather than his actual voice, during the kidnapper’s first call to her; that the victim said that “he was handcuffed, instead of being handcuffed”; that the 11:50 telephone call originated from a Marathon gas station in Kankakee, not from a Sunoco station in Aroma Park; and that FBI agents did not see a white male go to Rish’s home after leaving the pay telephone at 11:40.

On direct appeal, the defendant also raised the discrepancy in the origin of the 11:50 telephone call, and a number of other issues concerning the affidavit. 
Edwards
, 144 Ill. 2d at 129-33. Despite those matters, this court concluded that the warrant was valid and that the defendant was not entitled to a hearing into the accuracy of the affidavit under 
Franks v. Delaware
, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). We adhere to that decision. Even with the changes urged by the defendant, the Willis affidavit would still have provided sufficient information to justify the issuance of the search warrant.

In renewing his challenge to the affidavit in this appeal, the defendant places special emphasis on a comment made by Officer Willis that appears in a transcript of remarks by Officer Willis for a television program called “Top Cops.” According to the defendant, on that occasion, in May 1990, after the trial, Willis told the reporter on the program:

“Wanted the warrant to stand up in case we’re right. We know Edwards is it. We have no proof, but we know by cop instinct this guy is involved. He made the second phone call. Got to know where he’s at. Small might be at the house. So we made the decision to get the search warrant.”

The defendant argues that the comment “We have no proof” shows that Willis intentionally made material misstatements in the affidavit he submitted in support of the warrant. Rejecting this argument, the post-conviction judge characterized the officer’s comment as “theatrics.” We agree with the judge’s assessment. The remark “We have no proof” is belied by the extensive discussion preceding it in the transcript, in which Willis detailed the steps in the investigation and the events leading to the decision to focus on the defendant as a suspect in the case.

In addition, we question the relevance of the comment. The officer made the remark several years after the issuance of the warrant. We do not believe that Officer Willis’ later characterization of the case is relevant to the determination of probable cause made earlier by the judge who issued the warrant. Even without the items criticized by the defendant, the affidavit contained sufficient grounds to justify the issuance of the warrant.

III

The defendant next argues that the prosecution presented hypnotically refreshed testimony at trial, in violation of state law, without first disclosing the nature of the evidence to the defense. According to the defendant, the evidence in question was introduced during the testimony of Deputy Sheriff Jan Krizik, which, the defendant alleges, was enhanced through hypnosis. The defendant complains specifically that Krizik’s identification of the defendant’s van was the product of hypnosis the witness underwent before trial. At trial, Krizik testified that she identified the defendant’s van as having been on the street near the Small residence, and outside her own home, in the early morning hours of September 2 by the presence of decals on one of its rear windows. The defendant argues that Krizik acquired this detail–the presence of the decals–as a result of hypnosis. The defendant maintains that the State’s failure to disclose the occurrence of the hypnosis denied him his right to confront the witness. Apparently, the defense did not become aware of the hypnosis until Krizik testified at the trial of codefendant Rish.

Assuming that the hypnotically induced portion of a witness’ testimony should have been excluded from evidence at the time of the defendant’s trial (see 
People v. Zayas
, 131 Ill. 2d 284 (1989); 
People v. Wilson
, 116 Ill. 2d 29 (1987)), we do not believe that the defendant has shown what portion of Krizik’s testimony was affected by hypnosis. The defendant has not established in what respect the hypnosis altered or influenced Krizik’s recollection of the events in question. In support of this contention, the defendant submitted to the post-conviction court an affidavit from the person who performed the hypnosis, Joseph Tremonti, a priest. Father Tremonti stated in his affidavit that during hypnosis Krizik “related further facts [ ] not related initially.” The affidavit does not specify, however, what the new information consisted of.

As further proof that the witness’ description of the decals was enhanced through hypnosis, the defendant points to a report of an interview of Krizik conducted by another law enforcement officer, Officer Hancock. In relating what Krizik said, the report does not mention the presence of decals on the van’s windows. The defendant believes that the absence of this information from the report shows that the decals were a detail that the witness did not describe initially but mentioned later only as a consequence of hypnosis.

In testimony at trial, however, Krizik said that she told Hancock about the decals when he questioned her on September 2. In the absence of evidence that it was in fact the presence of the decals that Krizik recalled through hypnosis, we are unable to conclude that the testimony was altered in a material way.

Even if Krizik’s testimony on this point should have been barred because it was hypnotically induced or refreshed, exclusion of the testimony would not have made a difference in the case. There existed other, substantial evidence connecting the defendant to the offenses charged here. As noted earlier, in the summary of evidence presented at trial, the defendant led law enforcement officers to the site where the box was buried. The defendant had been seen constructing a similar box in the weeks preceding the victim’s abduction, and the defendant’s fingerprints were found on materials in the box. The defendant was seen in the places from which telephone calls were made to the victim’s family. Assuming that Deputy Krizik’s testimony was erroneously admitted, we do not believe that the error had any effect on the outcome of the trial, given the strong evidence establishing the defendant’s guilt for these offenses.

IV

The defendant next argues that the State failed to disclose before trial certain information that it was required to reveal to the defense under the principles announced in 
Brady v. Maryland
, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), and its progeny. The defendant contends that the information would have supported the defendant’s theory that other persons also took part in the commission of these offenses and that the defendant’s own role in the crimes was the product of compulsion. The defendant’s brief and amended post-conviction petition refer to a number of items of evidence, and we will briefly consider these.

The defendant first refers to a statement by Officer Willis that is included in the transcript of remarks made by Willis for the television program “Top Cops,” discussed earlier. The defendant cites Willis’ comment, “Danny built the box with a ventilation system, candy bars and water, to keep this guy alive.” The defendant believes that this remark was favorable to the defense, showing that he made efforts to assist the victim. The cited remark, however, was made by Willis after, rather than before, the defendant’s trial on these charges, and thus was not a matter withheld from the defense.

The defendant also cites a report showing that the federal government declined to prosecute, in an unrelated case, a person about whom the defendant was supplying information. According to the report, the prosecution was dropped because the defendant’s credibility would be seriously undermined by his involvement in the present offenses. The defendant contends, however, that disclosure of this report would have lent weight to his theory that the federal suspect arranged the commission of these crimes as a way of discrediting the defendant.

The defendant offers no credible evidence in support of his theory that the present offenses were the work of the suspect in the federal investigation. Relief is not available under 
Brady 
unless the defendant can establish that the evidence improperly withheld was material to the defense. In this context, favorable evidence is material “ ‘if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.’ ” 
People v. Coleman
, 183 Ill. 2d 366, 393 (1998), quoting 
United States v. Bagley
, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383 (1985). We fail to see how the report regarding the decision not to bring the federal prosecution was material to the present case.

The defendant also mentions the destruction of a “drug list,” apparently referring to items of evidence seized following the arrest of the defendant for a drug-related offense. The defendant does not explain the relevance of that inculpatory evidence to the present case or how its suppression would be a violation of 
Brady.

The defendant’s other 
Brady
-related claims are also unavailing. An FBI report stated that nothing of known value was found in a search of the defendant’s home, even though at that time investigators found a telephone book with the name “Small” circled. The report merely states one writer’s opinion, however, and does not amount to a violation. See 
People v. Mack
, 128 Ill. 2d 231, 247-48 (1989). The defendant says that he did not perform many of the acts the prosecution attributed to him at trial, but he does not elaborate on that point. He contends further that the prosecution did not provide information about a witness named Thad Wells, who testified at codefendant Rish’s trial that he saw two white males and one black male in a light-colored van in the vicinity of St. Anne around the time the box was buried in the ground. The defendant fails to allege, however, how that bit of information is favorable to him. The defendant also says that the State did not provide records showing that someone named Kathy Goodrich called his home in Bourbonnais at the same time the kidnapper placed one of the calls. The prosecution did not allege that the defendant made the calls from his own home, however, and therefore we question how this information would have assisted the defendant. The defendant also refers to flights made over the area, during the investigation of these offenses, by an FBI reconnaissance airplane known as “Night Stalker.” The defendant does not explain what information might have been revealed, or how that would have assisted the defense. Finally, the defendant alleges that the prosecution altered a store receipt by adding the names “Edwards and Rish” so that it would identify the purchasers of a quantity of wire ties. The State was not allowed to introduce the wire ties into evidence at the defendant’s trial, however (
Edwards
, 144 Ill. 2d at 170-71), and therefore we fail to see the significance of the allegedly altered receipt. In sum, the defendant has not established, whether through the record or affidavits, his entitlement to a hearing on this claim.

V

The defendant next argues that trial counsel and appellate counsel were ineffective in numerous ways. The competence of counsel is measured against the standard announced by the Supreme Court in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To prevail on a claim of ineffective assistance, a defendant must show both a deficiency in counsel’s performance and prejudice resulting from the alleged deficiency. 
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

To show a deficiency in counsel’s performance, a defendant must establish “that counsel’s representation fell below an objective standard of reasonableness.” 
Strickland
, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Judicial scrutiny of counsel’s performance is highly deferential, and a court considering a claim of ineffective assistance “must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” 
Strickland
, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

To demonstrate prejudice resulting from an alleged deficiency in counsel’s performance,“[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” 
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Because a defendant’s failure to satisfy either part of the 
Strickland 
test will defeat a claim of ineffective assistance, a court is not required to “address both components of the inquiry if the defendant makes an insufficient showing on one.” 
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069. Accordingly, a court considering a claim of ineffective assistance “need not determine whether counsel’s performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.” 
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

Allegations of ineffective assistance of appellate counsel are resolved under the same standard that governs the performance of trial counsel. 
People v. West
, 187 Ill. 2d 418, 435 (1999). Thus, a defendant who alleges that appellate counsel was ineffective must establish both a deficiency in counsel’s performance and prejudice resulting from the asserted deficiency. 
People v. Flores
, 153 Ill. 2d 264, 283 (1992). Appellate counsel is not required to brief every conceivable issue on appeal, however, and it is not incompetence for counsel to refrain from raising issues that counsel believes are without merit. 
People v. Johnson
, 154 Ill. 2d 227, 236 (1993). For these reasons, unless the underlying issue is meritorious, a defendant cannot be said to have incurred any prejudice from counsel’s failure to raise the particular issue on appeal. 
People v. Childress
, 191 Ill. 2d 168, 175 (2000).

A

The defendant complains of several acts and omissions by counsel during the pretrial proceedings. The defendant first argues that counsel was ineffective for failing to examine more closely the affidavit submitted by Officer Willis in support of the request for a search warrant. The defendant believes that closer inspection of the affidavit would have brought to counsel’s attention the alleged alterations to the document and would have enabled counsel to successfully challenge the issuance of the warrant on the basis of the alterations. There is no evidence that the alterations were made after the warrant was issued. As we have already concluded in this opinion, however, as well as in the opinion on direct appeal, we do not believe that the deficiencies alleged by the defendant, even if they had been called to the attention of the judge who issued the warrant, would have precluded its issuance.

The defendant next argues that trial counsel erred in failing to seek the suppression of tape recordings of calls made to Nancy Small by the kidnapper and by Jean Small. The defendant contends that the calls to the Small residence were recorded in violation of the state eavesdropping statute, section 108A–1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 108A–1). On direct appeal, this court found that the defendant’s objection to the introduction of the evidence was waived by his failure to raise the issue in the trial court. 
Edwards
, 144 Ill. 2d at 163-64. The defendant now argues that counsel was ineffective for failing to properly preserve the question.

We do not agree with the defendant that the calls were recorded in violation of the statute. In 
People v. Beardsley
, 115 Ill. 2d 47 (1986), and 
People v. Herrington
, 163 Ill. 2d 507 (1994), this court determined that authorization is not required under that provision when recordings are made with the consent of one of the persons taking part in the conversation. In the present case, the calls were recorded with Nancy Small’s consent. Thus, we must conclude that no statutory violation occurred in these circumstances. Counsel cannot be considered ineffective for failing to make or pursue what would have been a meritless objection.

In a further challenge to his lawyer’s pretrial actions, the defendant argues that counsel was ineffective for failing to seek to limit the times when the wooden box in which the victim had been buried was present in the courtroom. Apparently it was there throughout the defendant’s trial. The defendant notes that a motion to that effect was made and granted in the prosecution of his codefendant, Nancy Rish. The defendant contends that trial counsel should have made a similar motion in his case.

Even if the defendant’s motion had been granted, the defendant still could not have been able to exclude the box entirely. It still would have been present at various times during trial, for identification by witnesses who saw the defendant building it, and for identification by officers who were present when it was discovered in the ground. Moreover, the presence of the box does not appear to have been an element in the jury’s determination of guilt. As the State observes, Rish was also convicted of these offenses, though the wooden box was not in the courtroom during every moment of her trial. Thus, it does not appear that the presence of the box was an influential consideration in the jury’s guilty verdicts here.

The defendant also argues that the first lawyer appointed to represent him in this case was ineffective for failing to obtain, in a timely manner, the appointment of another lawyer to assist him in the case.

Before trial, the defendant’s appointed attorney asked for the appointment of co-counsel. The trial court at first denied the request, but when the motion was raised again, the court authorized the appointment of another lawyer. After that person withdrew from the case, the court appointed another person, several weeks before the beginning of trial. Thus, the defendant was represented by two lawyers at both the guilt phase and the sentencing phase of the proceedings.

We find no merit in the defendant’s complaint. First, it appears that counsel did all that could have been expected of him in seeking the appointment of a second lawyer in the case. Counsel persisted in his requests for the appointment of co-counsel and was ultimately successful, obtaining the services of a second lawyer before trial. Moreover, the defendant has failed to show that the appointment of co-counsel was necessary at an earlier point in the proceedings, that the court’s delay in authorizing the appointment of another lawyer was prejudicial in any manner, or that co-counsel’s earlier appearance in the case would have been helpful or beneficial to the defendant.

B

The defendant next raises a series of challenges to counsel’s performance during the guilt phase of the proceedings. The defendant first argues that trial counsel should have presented to the jury evidence that would have supported a defense of compulsion. With respect to that defense, section 7–11(a) of the Criminal Code of 1961 provides:

“A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct.” Ill. Rev. Stat. 1985, ch. 38, par. 7–11(a).

The defendant contends that trial counsel was ineffective for failing to present this defense to the jury. The defendant acknowledges that compulsion is not a defense to a felony punishable by death, but he asserts that it would have been a defense to the charges of aggravated kidnapping.

In support of this claim, the defendant’s petition mentions that the sheriff believed that a “hit” had been placed on the defendant, and that after his arrest in this case the defendant told Rish and law enforcement officers that this had been something he had had to do or Rish and her son would have been killed. We do not see the connection between the supposed “hit” and the defendant’s conduct in this case. Moreover, the defendant’s fears regarding Rish and her son, even if supported by the record or by affidavit, would not establish the defense of compulsion, which by definition is shown only by threats of harm to the actor.

The defendant next refers to this court’s statement on direct appeal that the defendant waived his right to ask for an instruction limiting the jury’s consideration of what have been referred to as “the house tape” and “the road tape.” These were the tape recording of calls made by the kidnapper to the Small residence (“the house tape”), and a tape recording made by the kidnapper of the victim’s voice, played during calls to the Small residence and later found along a country roadside (“the road tape”). 
Edwards
, 144 Ill. 2d at 163. In this post-conviction appeal, the defendant argues that trial counsel was ineffective for waiving an objection to the State’s use of this evidence, and that appellate counsel was ineffective for failing to challenge trial counsel’s performance.

The trial court ruled that the tapes were admissible as evidence of the 
corpus delicti 
in this case. 
Edwards
, 144 Ill. 2d at 166. On direct appeal, this court found that there was sufficient proof for the admission of the tapes as evidence of the defendant’s guilt in this case. 
Edwards
, 144 Ill. 2d at 168. Regarding the house tape, this court noted that the defendant was seen at places where two of the kidnapper’s calls were made, at the times when they were made. With respect to the road tape, the court cited Mrs. Small’s testimony that the voice that can be heard speaking to her husband on that tape was the same voice that she spoke with on all four ransom calls. Given this court’s determination of the proper use of this evidence, we believe that any effort by the defense counsel to exclude the tapes or limit their use would have been unsuccessful.

The defendant next argues that trial counsel was ineffective for failing to object to the prosecutor’s suggestion during trial that the defendant was trying to keep damaging information from the jury. This occurred during the direct examination of a prosecution witness, when, in response to an objection by the defendant, the prosecutor stated, “Well, judge, you know, he opens this up and then when I clarify it everything is objectionable. He doesn’t want it to come out.”

Contrary to the defendant’s argument, defense counsel objected, and the trial judge sustained the objection and instructed the jury to disregard the line of questioning. The judge’s favorable ruling striking the entire line of questioning included within its scope the particular comment made by the prosecutor. Generally, a ruling sustaining a defense objection is sufficient to cure any prejudice (
People v. Baptist
, 76 Ill. 2d 19, 30 (1979)), and we see no reason to reach a different conclusion in this case.

The defendant also contends that counsel rendered ineffective assistance by failing to point out on cross-examination of a State witness the presence of 12 unidentified fingerprints in the wooden box in which the victim was buried.

The defendant does not dispute that his fingerprints were found on materials inside the box. The unidentified prints could have belonged to any number of persons who had been in contact with the box and its materials while it was being constructed or after it was discovered. We do not see how the introduction of evidence of the unidentified prints would have assisted the defendant. As we have previously noted, the defendant can marshal only vague assertions in support of a compulsion defense; the existence of unidentified prints on the box, of unknown age and provenance, is too remote to be of help here.

The defendant next argues that counsel was ineffective at trial for failing to impeach several witnesses with certain information. First, the defendant cites an FBI report that an employee of the service station where the 5 p.m. call originated believed that a black male made a telephone call at that time, after getting out of a car that contained another black male and a black female. Next, the defendant refers to FBI reports describing the interview with Deputy Jan Krizik, which do not mention the decals that she claimed to see in the van’s windows. Finally, the defendant cites an FBI report that said that a search of the defendant’s home did not turn up anything of value, even though other evidence showed that officers found a local telephone book with name “Small.”

In response to these contentions in the circuit court, the State argued that the defendant had failed to develop them with the required specificity. The defendant’s amended petition presented this issue in summary fashion, stating only that trial counsel was ineffective for failing to impeach witnesses with information that counsel knew or should have known. The petition then cited a lengthy summary of the police investigation. We agree with the State that an evidentiary hearing is not warranted on these allegations, for the materials submitted by the defendant fail to make a substantial showing of a violation of his constitutional rights. See 
People v. Maxwell
, 173 Ill. 2d 102, 107 (1996); 
People v. Owens
, 129 Ill. 2d 303, 308 (1989). In any event, we do not believe that the impeachment value of this material was great.

Finally, the defendant challenges trial counsel’s failure to preserve objections to certain comments made by the prosecutor during closing argument at the guilt phase of the proceedings. The defendant first cites the prosecutor’s statement, “He–by his own words, he has said 48 hours of air existed if you believe him and I don’t for a second.” The prosecutor was referring to one of the kidnapper’s calls to Mrs. Small, in which the kidnapper said that her husband would be able to breathe for 48 hours. The defendant argues that the prosecutor improperly stated his own opinion regarding the evidence in this case.

Defense counsel objected to that comment, and the trial judge sustained the defense objection and instructed the jury to disregard the remark. We believe that any error in the prosecutor’s comment was cured by the trial judge’s action in sustaining the objection and instructing the jury to disregard the comment. This should have been sufficient to cure any prejudice.

The defendant also challenges the prosecutor’s argument that a neighbor said that the defendant looked proud when he built the wooden box. Even if this comment was not supported by the evidence, we do not believe that it denied the defendant a fair trial. This was a brief comment, and we do not believe that it would have affected the jury’s determination here.

The defendant next takes issue with the prosecutor’s statement in closing argument that the victim scratched, clawed, and pulled in an effort to escape from the wooden box in which he had been placed. The defendant contends that there was no evidence to support the prosecutor’s comment.

Contrary to the defendant’s view, we believe that the comment finds support in the evidence. Chemical analysis of the wood inside the box showed contact with human skin. Also, the medical examiner reported finding abrasions on the victim’s forehead, right hand, and elbow. This was sufficient to support the inference that the victim struggled while inside the box, in an effort to free himself.

The defendant also challenges the prosecutor’s remark that the kidnapper, in his call to Jean Small, told Jean that he would kill Jean’s husband “too”; the defendant contends that the evidence showed that the kidnapper said only that he would kill Jean’s husband, without using the word “too.” Given the defendant’s conduct in causing the victim’s death, we do not see how the defendant could have incurred any prejudice as a result of the prosecutor’s paraphrase of the testimony.

C

The defendant also argues that counsel rendered ineffective assistance at the capital sentencing hearing conducted in this case. In this context, the inquiry into prejudice under 
Strickland 
requires an examination of the effect of counsel’s error on the sentencer’s decision. 
People v. Tenner
, 175 Ill. 2d 372, 384 (1997); 
People v. Sanchez
, 169 Ill. 2d 472, 491 (1996); 
People v. Ashford
, 168 Ill. 2d 494, 505 (1995); 
People v. Coleman
, 168 Ill. 2d 509, 536 (1995). The relevant question here, then, is “whether there is a reasonable probability that, absent the errors, the sentencer–including an appellate court, to the extent that it independently reweighs the evidence–would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” 
Strickland
, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.

At the second stage of the sentencing hearing, defense counsel sought to introduce into evidence videotapes of the defendant’s two children, in which they spoke of their feelings for their father. The State objected to the evidence, arguing that the children might not be competent to testify and observing that their videotaped comments were not made under oath and were not subject to cross-examination. The trial judge sustained the State’s objection to the evidence. On direct appeal, this court upheld the judge’s ruling. 
Edwards
, 144 Ill. 2d at 174-75. This court also noted that the defendant had declined an offer by the prosecution to stipulate to the substance of the children’s statements on the tapes. The defendant now argues that trial counsel was ineffective for failing to accept the State’s offer to stipulate to the evidence.

We believe that defense counsel’s decision not to stipulate to the evidence was essentially a matter of trial strategy and therefore will not support a claim of ineffective assistance of counsel. At the sentencing hearing, in refusing the State’s offer to stipulate to the children’s statements, defense counsel explained that he believed that the tapes were admissible and that the stipulation was not an adequate substitute for their contents. The decision whether to accept the State’s offer was in essence a matter of trial strategy, and a reviewing court generally will not second-guess a decision of that nature. 
Strickland v. Washington
, 466 U.S. 668, 690-91, 80 L. Ed. 2d 674, 695, 104 S. Ct. 2052, 2066 (1984); 
People v. Franklin
, 167 Ill. 2d 1, 22 (1995); 
People v. Palmer
, 162 Ill. 2d 465, 479 (1994). We see no reason to do so here.

The defendant next argues that trial counsel was ineffective for failing to offer, as mitigation, evidence that the defendant had previously cooperated with police following his arrest in a prior drug-related case. Counsel might have believed that the evidence would have focused more attention on the defendant’s prior misconduct, and also that the jury would simply think that the defendant had been acting out of self-interest at that time. We believe that this was essentially a question of strategy, and we will not further consider counsel’s decision here.

The defendant also contends that counsel was ineffective for failing to have a police officer testify at the sentencing hearing about the defendant’s reaction at the site where the victim’s body was found. The defendant suggests that Detective Robert Anderson would have testified that the defendant was frantic and started digging in the ground with his hands.

We do not believe that counsel can be deemed ineffective for failing to offer this evidence. The additional testimony proposed by the defendant would have been cumulative of testimony already admitted into evidence. Counsel had already presented similar testimony from two other law enforcement officers. Officer John Gerard testified that the defendant cried, “Oh, no, oh, no,” when told that the victim was dead. Sergeant Maurice Mietzner testified that the defendant got down on his knees to help dig up the victim and cried out, “Oh, no, oh, no, he can’t be dead,” when informed of the victim’s death. The witnesses also said that the defendant seemed to quickly resume his prior behavior shortly after that. Defense counsel was not required to present a third witness to testify about what two other witnesses had already described to the jury, and we do not believe that any particular advantage would have been gained by offering this additional testimony.

The defendant next argues that trial counsel was ineffective at the sentencing hearing because he failed to call as a witness Mary DeSloover, who had prepared a report about the defendant that was admitted into evidence as mitigation. The defendant argues that the witness’ testimony could have helped establish, as mitigation in this case, the defendant’s history of psychological problems. In the report, DeSloover provided information about the defendant’s history of drug abuse and cited evidence that heavy drug use can lead to psychological problems.

We believe that counsel’s failure to present DeSloover as a witness was essentially a matter of trial strategy. DeSloover’s report was admitted into evidence over the State’s objection. In objecting to the report, the State challenged both the witness’ qualifications and her conclusions. Although the trial court admitted the report into evidence, the defendant chose not to present her live testimony also. Defense counsel could have viewed this arrangement as advantageous to the defendant, for the report was admitted into evidence, but its author was not subjected to cross-examination by the State. Defense counsel’s decision not to call DeSloover to testify was essentially a question of strategy, and we will not attempt to second-guess that choice here.

The defendant also argues that counsel was ineffective for failing to raise compulsion at the capital sentencing hearing conducted in this case. The defendant notes that although compulsion is not a defense to a crime punishable by death, it may qualify as a mitigating circumstance at a capital sentencing hearing. See Ill. Rev. Stat. 1985, ch. 38, par. 9–1(c)(4).

As we noted earlier in this opinion, in rejecting the companion argument that counsel should have presented a compulsion defense during the guilt phase of the proceedings, the defendant has failed to provide any evidence in support of this theory of the case. The defendant, in his brief, refers only to the defendant’s own statement that he told Rish that he had to do what he was doing to protect his family, her, and her son from some undefined harm. In addition, the defendant makes vague references to the possible involvement of others in these offenses. We do not believe that the defendant has presented sufficient grounds that would warrant a hearing or other relief on these allegations.

The defendant also complains that trial counsel and appellate counsel failed to preserve objections to certain comments in the prosecutor’s closing argument at the second stage of the capital sentencing hearing. On direct appeal, this court found a number of objections waived. 
Edwards
, 144 Ill. 2d at 175-76. The defendant first cites the prosecutor’s comment that evidence of the defendant’s good family background, offered by the defense in mitigation, was actually aggravating. We consider this to be a fair comment on the evidence, and therefore counsel cannot be considered ineffective for failing to object to the remark. The State is not required to accept the defendant’s characterization of evidence offered in mitigation. In this case, one could argue that the defendant’s later criminal conduct shows that he rejected his upbringing, and that he turned to crime despite his favorable background.

The defendant also complains of the prosecutor’s comment that the jury should not consider sympathy in making its decision. We find no error in this remark, and therefore counsel cannot be deemed ineffective for failing to object to it. The prosecutor’s statement was entirely consistent with a jury instruction, previously approved by this court, advising jurors that sympathy should not influence their sentencing decision. See 
People v. Walker
, 109 Ill. 2d 484, 507 (1985); 
People v. Stewart
, 104 Ill. 2d 463, 493-94 (1984).

The defendant also takes issue with the prosecutor’s argument urging the jury to imagine the feelings of the victim as he was placed in the wooden box. A defense objection to this comment was overruled. The State concedes that the comment was improper (see 
People v. Henderson
, 142 Ill. 2d 258, 321-22 (1990); 
People v. Spreitzer
, 123 Ill. 2d 1, 37-38 (1988)) but contends that appellate counsel’s apparent failure to preserve the issue does not constitute ineffective assistance. We agree. The remark was isolated and fleeting, and we do not believe that it affected the outcome of the sentencing hearing.

Finally, the defendant contends that trial counsel was ineffective for failing to object to comments by the prosecutor that called his actions here less than human. The prosecutor stated, “What Danny Edwards did was not the actions of a human being, a civilized human being. They are the actions of something less.” The defendant asserts that the prosecutor’s argument was improper because it effectively equated him with an animal, and that counsel was ineffective when he did not preserve an objection to this part of the State’s closing argument.

Even if the prosecutor’s characterization of the defendant was improper, we do not believe that the comment was prejudicial to the defendant, or that counsel was ineffective for failing to preserve an objection to it. Comments like the one challenged here do not warrant reversal unless they result in substantial prejudice to the defendant. 
People v. Coleman
, 129 Ill. 2d 321, 347 (1989). The prosecutor’s remark here was brief and isolated, and we do not believe that it could have denied the defendant a fair sentencing hearing.

VI

The defendant also challenges, on two separate grounds, the manner in which the jury was selected for trial and sentencing. The defendant first argues that the prosecutor improperly exercised peremptory challenges against prospective jurors who expressed reservations about the death penalty but who were not removable for cause under the principles announced in 
Witherspoon v. Illinois
, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968), and its progeny. The defendant contends that the State may not exercise a challenge against a prospective juror because of his or her views regarding capital punishment. Rejecting the same argument, this court has previously held that the 
Witherspoon 
line of authority does not limit the prosecution’s power to exercise peremptory challenges against prospective jurors whose views about the death penalty would not support a challenge for cause. See 
People v. Coleman
, 168 Ill. 2d 509, 548-49 (1995); 
People v. Williams
, 161 Ill. 2d 1, 55-56 (1994); 
People v. Howard
, 147 Ill. 2d 103, 136-38 (1991); 
People v. Stewart
, 104 Ill. 2d 463, 481-82 (1984). The defendant has presented no reason to depart from those decisions, and therefore we must reject the defendant’s argument here.

The defendant next challenges the State’s exercise of peremptory challenges against four black members of the venire, arguing that the prosecutor’s actions violated the rule announced in 
Batson v. Kentucky
, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). Although this court addressed the identical issue on direct appeal, finding no violation of 
Batson
, the defendant contends that the question must now be reconsidered in light of the Supreme Court’s decision in 
Powers v. Ohio
, 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991), which held that defendants of any race have standing to challenge the race-based exclusion of jurors. Contrary to the defendant’s contention, however, this court did discuss 
Powers 
in the course of resolving the 
Batson 
question on direct appeal. 
Edwards
, 144 Ill. 2d at 150-54. We see no reason to revisit this issue, and we adhere to our earlier decision.

VII

The defendant, in his final post-conviction argument, contends that his death sentence is the product of an impermissible double enhancement of his conviction for aggravated kidnapping. The State contends that the defendant has waived consideration of this issue because he failed to include the point in his post-conviction petitions. We agree. See 
People v. Johnson
, 154 Ill. 2d 227, 233 (1993); 725 ILCS 5/122–3 (West 1994). In any event, the argument is without merit. First, it is not clear that double enhancement occurred in this case. The defendant was charged with first degree murder and aggravated kidnapping under multiple theories, and the jury returned general verdicts of guilty for each offense. Multiple theories of aggravated kidnapping would have supported both conviction on that offense and the establishment of a statutory aggravating circumstance for the death penalty. See 
People v. Terrell
, 132 Ill. 2d 178, 221 (1989).

Second, this court has held that double enhancement is permitted under the statutory aggravating circumstance used to establish the defendant’s eligibility for the death penalty in this case. This court has explained that section 9–1(b)(6) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9–1(b)(6)), murder in the course of another felony, contemplates that the enhancement of certain felonies may also result in a defendant’s eligibility for the death penalty. 
People v. Rissley
, 165 Ill. 2d 364, 392 (1995). In this case, then, the defendant’s eligibility for the death penalty may stand, even if one assumes that it was the product of a double enhancement.

*   *   *

For the reasons stated, the judgment of the circuit court of Kankakee County is affirmed. The clerk of this court is directed to enter an order setting Wednesday, May  16, 2001, as the date on which the sentence of death, entered in the circuit court of Kankakee County, is to be carried out. The defendant shall be executed in the manner provided by law. 725 ILCS 5/119–5 (West 1998). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Tamms Correctional Center, and to the warden of the institution where the defendant is now confined.

Judgment affirmed.

CHIEF JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that Edwards’ convictions should not be disturbed. In my view, however, his sentence of death cannot be allowed to stand. For the reasons set forth in my partial concurrence and partial dissent in
 People v. Bull
, 185 Ill. 2d 179 (1998)
, the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2). Edwards’ sentence of death should therefore be vacated, and the cause should be remanded to the circuit court for imposition of a sentence of imprisonment. Ill. Rev. Stat. 1985, ch. 38, par.  9–1(j).