NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180674-U

NO. 4-18-0674

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 31, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| MARKEL A. BARBER, | ) | No. 15CF905 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:     Defendant failed to establish he received unreasonable assistance of postconviction counsel.

¶ 2     In October of 2018, the trial court denied defendant's amended petition for postconviction relief. On appeal, defendant argues he did not receive reasonable assistance from postconviction counsel because postconviction counsel failed to adequately present his contentions of a constitutional violation during the third stage evidentiary hearing. We affirm.

¶ 3                                         I. BACKGROUND

¶ 4     On June 22, 2015, the State charged defendant with aggravated battery (720 ILCS 5/12-3.05(d)(2) (West 2014)). Defendant pled guilty to the charge on July 30, 2015, and was sentenced to 30 months' probation.

¶ 5        On September 8, 2017, the State filed a petition to revoke probation (PTR). In the PTR, the State alleged defendant had violated the terms of his probation by failing to report to court services on August 15, 2017, notify court services of his current address or whether he had changed his residence, obtain an evaluation for alcohol and drug abuse, and enroll in a partner abuse intervention program.

¶ 6        An evidentiary hearing on the PTR was scheduled for October 23, 2017. On that date, defendant's counsel began the proceeding by informing the trial court that defendant intended to admit the allegations contained in the PTR. The court then asked defendant whether he "had enough time to discuss *** this [PTR] and decide how [he] want[ed] to proceed." Defendant responded, "Guilty." The court admonished defendant regarding the PTR and the possible sentencing range, as well as his rights. The State recited the terms of the fully negotiated agreement which involved defendant's admission to the PTR in exchange for a prison term of five years and one year of mandatory supervised release. Pursuant to the agreement, the State also agreed to dismiss two pending felony charges. The State then presented a factual basis in support of defendant's admission. Defendant agreed the State accurately recited the terms of the agreement and "admit[ted] that what [was] being claimed in [the PTR] [was] true and correct." The court found defendant's stipulation and admission was knowing and voluntary and sentenced him in accordance with the parties' negotiated agreement.

¶ 7        On November 30, 2017, defendant *pro se* filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). In his *pro se* petition, defendant alleged the following: "Defendant was coerced into taking a plea deal for [five] years. Defendant was the victim of ineffective counsel." On February 1, 2018, the trial court appointed postconviction counsel.

¶ 8         On April 16, 2018, postconviction counsel filed an amended postconviction petition. In the amended petition, defendant asserted four allegations of ineffective assistance of plea counsel. Relevant to this appeal, defendant alleged plea counsel "failed to introduce any evidence at [the PTR] hearing regarding medical records that [defendant] provided to [plea] counsel." The petition stated these records "demonstrated that [defendant] was unable to complete services in the time constraints imposed under the probation order." On August 22, 2018, the trial court entered an order denying the State's motion to dismiss the amended petition.

¶ 9         On October 1, 2018, an evidentiary hearing was held on defendant's amended postconviction petition. At the hearing, defendant was represented by new postconviction counsel. At the beginning of the proceeding, postconviction counsel filed a certificate stating she had had complied with the requirements of Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 10        Defendant testified on his own behalf. During his direct examination, postconviction counsel did not ask defendant any questions about the medical records he alleged plea counsel should have presented; postconviction counsel only questioned defendant about the other allegations contained in the amended postconviction petition. On cross-examination, the following colloquy between the prosecutor and defendant occurred.

          "Q. Mr. Barber in your allegations on the post[ ]conviction petition you complain about something regarding medical records. [I]s that right?

          A. Yeah with my son. It was stating a reason why—the reason why I didn't do my two classes the anger management and the—the substance abuse. Because we had to sit in Peoria over six months because my son was born at the St. Francis Children's Hospital because my son was born with a—a great transition of the arteries [*sic*] his vessels [were] changed."

During cross-examination defendant also acknowledged plea counsel had reviewed the medical records, discussed them with him, and informed him she would not present the records to the trial court unless there was an "open sentencing plea." Defendant did not testify further regarding his son's medical records

¶ 11    The State called plea counsel, Amanda Riess. Riess testified that prior to defendant's admission to the PTR, she reviewed defendant's son's medical records. She stated she did not believe "they would help his situation as far as actually refuting the allegations of the [PTR]." Riess confirmed the records showed defendant's son had a "heart defect" but explained the records also showed defendant's son was not hospitalized "the entire period of time in which [defendant] was ordered to do different things for the purposes of probation." According to Riess, "[m]any of the records documented follow-up visits that essentially said the goal—or the recommendations were for [defendant's son] to come back in a few months for a follow-up." On cross-examination, Riess testified she did not give the medical records to the prosecutor, but she informed him of the child's condition "as part of the negotiations."

¶ 12    The trial court ultimately denied defendant's petition, finding "there [was] no violation of a constitutional interest." Regarding the medical records, the court found:

> "[The] allegations [in the PTR] would not be defeated by some suggestion that [defendant's] son had medical problems that required his attention in the hospital and [plea counsel] *** elaborated on the fact she fully considered that not only conveyed it to [the prosecutor] as apparent in the emails but that it didn't cover all the time that he didn't report and all the time that Court Services could not find him. So it would not be a defense to the petition."

The court noted the medical records might possibly have been relevant as evidence in mitigation

had there been an open plea, but "defendant elected to admit and not to risk then the graver sentence that he faced."

¶ 13    This appeal followed.

¶ 14                    II. ANALYSIS

¶ 15    On appeal, defendant argues he did not receive reasonable assistance from postconviction counsel during the third-stage evidentiary hearing. Specifically, defendant argues postconviction counsel provided unreasonable assistance by failing to: "(1) provide the medical records that were the basis of [defendant's] claim that [plea counsel] was ineffective in failing to produce ***; and (2) ask [defendant] whether he would have admitted the allegations of the PTR had [plea counsel] not performed deficiently."

¶ 16                    A. The Act

¶ 17    "The Act sets forth a procedural mechanism through which a defendant can claim that 'in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both.' " *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 27, 40 N.E.3d 1235 (quoting 725 ILCS 5/122-1(a)(1) (West 2008)). A defendant commences a postconviction proceeding under the Act by filing a petition for relief in the trial court. 725 ILCS 5/122-1(b) (West 2016). Once a postconviction petition is filed, it undergoes a three-stage adjudication process. *People v. Harris*, 224 Ill. 2d 115, 125, 862 N.E.2d 960, 967 (2007).

¶ 18    At the first stage of postconviction proceedings, the court determines whether the petition is frivolous and patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10, 912 N.E.2d 1204, 1208-09 (2009). When a postconviction petition is not dismissed at the first stage, it advances to the second stage. *Harris*, 224 Ill. 2d at 126. "The second stage of postconviction

review tests the legal sufficiency of the petition." *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767. During this stage, "counsel may be appointed to an indigent defendant and the State may file a motion to dismiss or an answer to the petition." *Id.* ¶ 33.

¶ 19        If the petition is not dismissed during the second stage, it then advances to the third stage, which is an evidentiary hearing. *Id.* ¶ 34. "At such a hearing, the circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts." *Id.* At the third-stage evidentiary hearing, "the burden of proof is upon the petitioner to show a denial of [a] constitutional right by a preponderance of the evidence." (Internal quotation marks omitted.) *People v. Coleman*, 2013 IL 113307, ¶ 92, 996 N.E.2d 617.

¶ 20        "Because the sixth amendment right to counsel does not extend to postconviction petitioners, counsel is afforded in collateral proceedings under the Act only as a matter of legislative grace, if at all. [Citation.] Consequently, criminal defendants seeking relief in postconviction proceedings have no constitutional right to counsel, effective or otherwise. Postconviction petitioners are entitled to only the level of assistance guaranteed by the Act. [Citation]. The required quantum of assistance has been judicially deemed to be a reasonable level, a standard that is significantly lower than the one mandated at trial by our state and federal constitutions. [Citation]." (Internal quotation marks omitted.) *People v. Custer*, 2019 IL 123339, ¶ 30.

¶ 21                                B. Defendant's Claim

¶ 22        Defendant alleges postconviction counsel provided unreasonable assistance because she failed to "(1) provide the medical records that were the basis of [defendant's] claim

that [plea counsel] was ineffective in failing to produce \*\*\*; and (2) ask [defendant] whether he would have admitted the allegations of the PTR had [plea counsel] not performed deficiently." Neither of these contentions demonstrate postconviction counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 23　　　　Regarding a claim that counsel provided unreasonable assistance during third-stage proceedings, if a defendant is unable to establish ineffective assistance, he has also necessarily failed to establish unreasonable assistance, a less rigorous standard than ineffective assistance. *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 37, 145 N.E.3d 705. To establish ineffective assistance of counsel under *Strickland*, "a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance caused prejudice." *People v. Ross*, 229 Ill. 2d 255, 260, 891 N.E.2d 865, 869 (2008). To establish counsel's substandard performance caused prejudice, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *People v. Colon*, 225 Ill. 2d 125, 135, 866 N.E.2d 207, 213 (2007). It is well established that "a defendant's failure to satisfy either part of the *Strickland* test will defeat a claim of ineffective assistance." *People v. Edwards*, 195 Ill. 2d 142, 163, 745 N.E.2d 1212, 1223-24 (2001). "Accordingly, a court considering a claim of ineffective assistance need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." (Internal quotation marks omitted.) *Id.* Here, defendant's claims fail because he cannot establish that he was prejudiced by postconviction counsel's alleged errors.

¶ 24　　　　Defendant claims he was prejudiced by postconviction counsel's failure to admit the medical records because, "[w]ithout those documents it was impossible for postconviction

counsel to prove that [plea] counsel did not make a reasonable strategic decision" and "impossible for him to make the requisite showing of prejudice through not being able to present a plausible defense." However, defendant's claim fails because the record shows that his son's medical records would not have served as a complete defense to the allegations made in the PTR.

¶ 25 During the third-stage evidentiary hearing, defendant's plea counsel testified that, although the medical records showed defendant's son had been born with a heart condition, the records "did not cover the entire period of time in which [defendant] was ordered to do different things for the purposes of probation. Many of the records documented follow-up visits that essentially said the goal—or the recommendations were for [defendant's son] to come back in a few months for a follow-up." Defendant's plea counsel agreed that the medical records "would not have provided a complete and successful defense to the allegations of the [PTR]."

¶ 26 Defendant also testified about his son's medical records. In response to a question posed by the State, defendant testified that the medical records would have shown "the reason why [he] didn't do [his] *** anger management and *** substance abuse [classes]." However, in the PTR, the State also alleged defendant had violated the terms of his probation by failing to give notice in writing of a change in address. Thus, even assuming the medical records would have established defendant was required to be in the hospital with his son during the entire period of defendant's probationary period—a dubious proposition—they would not have served as a defense to *all* of the allegations contained in the petition. Accordingly, because we find defendant was not prejudiced by postconviction counsel's failure to present his son's medical records during the evidentiary hearing, he is unable to establish counsel was ineffective, let alone that counsel provided unreasonable assistance.

¶ 27 As noted, defendant's second claim on appeal is that postconviction counsel

provided unreasonable assistance when, at the third stage hearing, she failed to ask defendant "if he would have admitted the PTR had the records been introduced in the first place." We find this claim is without merit. In his brief, defendant fails to explain when or how plea counsel was supposed to present the medical records to the trial court. The record clearly shows there was no evidentiary hearing on the PTR. More importantly, defendant fails to explain how he was prejudiced by this alleged failure of counsel. Defendant acknowledged during his testimony that he had discussed the medical records with plea counsel prior to admitting to the PTR. Thus, defendant was aware of the medical records before the plea hearing, no matter that they were not presented to the court. Defendant has failed to establish he received unreasonable assistance of counsel as alleged.

¶ 28                                    III. CONCLUSION

¶ 29          For the reasons stated, we affirm the trial court's judgment.

¶ 30          Affirmed.