NOTICE

Decision filed 05/02/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220292-U

NO. 5-22-0292

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 17-CF-1639 |
| | ) | |
| DAMIAN L. GUDE, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the circuit court did not commit manifest error in denying the defendant's postconviction petition, and where postconviction counsel provided the defendant with reasonable assistance, and because any argument to the contrary would lack merit, the defendant's appointed appellate counsel is granted leave to withdraw, and the judgment of the circuit court, denying the defendant's postconviction petition following an evidentiary hearing, is affirmed.

¶ 2    The defendant, Damian L. Gude, pleaded guilty to a single count of armed robbery in exchange for a 20-year "cap" on his prison sentence and the dismissal of three related felony counts, and he was subsequently sentenced to imprisonment for 17 years. Two years afterward, he filed a *pro se* petition for postconviction relief. An amended petition was filed on the defendant's behalf by appointed postconviction counsel. The petition raised various claims, including ineffectiveness of plea counsel. The petition advanced to the third stage of

1

postconviction proceedings, where the circuit court held an evidentiary hearing and ultimately denied postconviction relief. The defendant now appeals from that denial. The defendant's appointed counsel on appeal, the Office of the State Appellate Defender (OSAD), has concluded that the instant appeal lacks substantial merit. On that basis, it has filed with this court a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a memorandum of law in support thereof. OSAD gave proper notice to the defendant. This court gave him an opportunity to file a *pro se* brief, memorandum, or other document explaining why OSAD should not be allowed to withdraw as counsel, or why this appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Finley* motion and memorandum of law, as well as the entire record on appeal, and has concluded that this appeal does indeed lack merit. Accordingly, OSAD's *Finley* motion is granted, and the judgment of the circuit court is affirmed.

¶ 3                                    BACKGROUND

¶ 4      In November 2017, the defendant was charged by information with two counts of armed violence (counts I and II) and two counts of armed robbery (counts III and IV). All four felony counts stemmed from the mugging of a pizza-delivery driver on October 28, 2017. The circuit court appointed a public defender to represent the defendant on those charges.

¶ 5      On April 16, 2018—the date the case was scheduled for trial to begin—the State and the defendant's public defender appeared before the circuit court, Judge Griffith presiding, and announced that they were ready for trial. The public defender also told the court that the defendant wanted a continuance in order to hire private counsel. The State objected. The court denied the motion for continuance.

¶ 6 Later that same day, the defendant, his public defender, and a prosecutor appeared before the circuit court, Judge Geisler presiding, for a negotiated plea of guilty. The court proceeded to admonish the defendant. See Ill. S. Ct. R. 402(a)(3), (a)(4) (eff. July 1, 2012). The court stated that the defendant had a right to plead not guilty and to ask for a trial before a jury or a judge, but that if he pleaded guilty, he would "give up" his constitutional right to a trial of any kind. The court continued to admonish the defendant that by pleading guilty, he also would "give up" his constitutional rights to present evidence on his own behalf, to subpoena witnesses if they would not appear voluntarily, to confront and cross-examine any witness called by the State, to remain silent at trial, and to insist that the State prove him guilty beyond a reasonable doubt, thus rebutting the presumption of innocence. The court also admonished the defendant (pursuant to Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001)) that even if he did plead guilty and the court decided to "go along" with the agreement, he would still have a right to appeal, which would involve his filing a motion to withdraw his guilty plea within 30 days, etc. Later, the court asked the defendant whether he had "heard" those rights, and the defendant answered that he did, and the court asked whether he had any questions about them, and he answered that he did not.

¶ 7 The public defender informed the court that under the terms of the agreement with the State, the defendant would plead guilty to armed robbery as charged in count III, and he would be sentenced to a prison term capped at 20 years, while the other three counts in this case, plus the counts in two unrelated felony cases, would be dismissed. The prosecutor concurred, adding that the defendant's criminal history—"he has a Class 1 and a Class X in his background"—made him eligible to be sentenced as a Class X offender in this case and in those two other cases, at the court's discretion.

¶ 8    The circuit court admonished the defendant that under his agreement, he would plead guilty to count III, armed robbery, and the three other counts would be dismissed, and that he would be sentenced to imprisonment for a term to be determined by the court after a sentencing hearing but capped at 20 years. The defendant indicated that this was his understanding of the parties' agreement. The court went on to state that the charge to which he was offering to plead guilty was a Class X felony, which was nonprobationable and was punishable by imprisonment for a term of 6 to 30 years, to be followed by mandatory supervised release (MSR) for a term of 3 years, and the defendant indicated his understanding. The court also described, generally, the possible sentencing in those two other felony cases, and stated that consecutive sentencing was up to the court to determine, and the defendant indicated his understanding of all that.

¶ 9    Referring to count III in the instant case, the court admonished the defendant, specifically, about the nature of the charge of armed robbery, and he asked the defendant whether he was pleading guilty to armed robbery knowingly and voluntarily, and the defendant answered in the affirmative. The defendant signed a plea of guilty. The court asked whether "[a]ny threats of force" had been made to persuade him to plead guilty, or whether "[a]ny promises *** other than the plea terms" had been made, and the defendant answered both inquiries in the negative. The defendant indicated that his public defender had answered all his questions, and he also indicated that pleading guilty to the charge was what he wished to do.

¶ 10    The prosecutor presented a factual basis for the plea. He described how, during the evening of October 28, 2017, the victim went to 737 West Forest Avenue in order to deliver a pizza, when a robber struck him over the head with a bludgeon, held a knife to his throat and threatened him, and took money and pizzas from him. He went on to describe how a Decatur police officer investigated the incident. The officer reviewed security footage from an apartment building near

4

the crime scene. It showed a man who resembled the defendant, and who wore a sweatshirt, leaving an apartment and then returning to it. The police focused on that apartment, which was rented to a "Mr. Pennerman." At that apartment, police found the defendant. They also found a telephone with the victim's telephone number on it, and a sweatshirt like the one worn by the man in the security footage. The sweatshirt was stained with blood, and DNA testing showed that the blood had come from the robbery victim. The victim "was going to come into court and do an identification of the defendant," the prosecutor said. The court found a factual basis for the plea.

¶ 11 The court entered judgment on the plea of guilty to count III, armed robbery, and scheduled a sentencing hearing for September, at which the maximum prison sentence would be 20 years. It dismissed counts I, II, and IV of the information.

¶ 12 In May 2018, the defendant filed a one-page, handwritten letter to the circuit court, asking to withdraw his guilty plea. The defendant listed three reasons for wanting to withdraw: (1) there was a conflict of interest between himself and his public defender, stemming from the fact that he had been the prosecutor in the defendant's criminal case from years earlier; (2) the public defender was ineffective because he had such a large volume of cases that he could not devote sufficient time to the defendant's case, and he had "evidence which was never shared or presented to [the defendant] as it should of [*sic*] been"; and (3) on the day set for trial, the defendant was deprived of his right to hire his own attorney.

¶ 13 In June 2018, the parties again appeared before the court. The court reviewed with the defendant the letter he had written to the court, and he asked the defendant whether he had anything to add. He then asked the public defender (still representing the defendant) to comment. In regard to the conflict-of-interest claim, the court found that there was no conflict, for 17 years had passed since counsel served as the prosecutor in the defendant's former case. The court also found that

counsel had not been ineffective, and that there was no error in denying his motion to continue to hire his own attorney. The court set the cause for a status hearing, so that the defendant and his public defender could discuss how to proceed.

¶ 14 On a few occasions, the court thereafter continued the cause in order to give the defendant time to hire an attorney. He did not hire one. The cause was set for a sentencing hearing, with the public defender continuing to represent the defendant.

¶ 15 A presentence investigation report showed that the defendant was born in 1983. His criminal history included a 2001 conviction for armed robbery, a Class X felony, with a sentence of 10 years in the Illinois Department of Corrections (DOC), and a 2010 conviction for robbery of a victim 60 years of age or older, a Class 1 felony, with a sentence of 12 years in the DOC.

¶ 16 In September 2018, the court held a sentencing hearing. Regarding the presentence investigation report, neither the prosecution nor the defense had any errors to bring to the court's attention. The defense called the sole witness at the sentencing, the defendant's mother, Beverly Gude. She testified that the defendant treated her and the other members of their family "real well," and he was "a very good father" to his child. The defendant did not make a statement in allocution. The State recommended a sentence of 20 years in prison, while the public defender recommended "around 12 to 13 years." The court sentenced the defendant to imprisonment in the DOC for 17 years, to be followed by 3 years of MSR. The court admonished the defendant about his right to appeal, and the defendant indicated his understanding. Finally, the court dismissed all counts in the two unrelated felony cases.

¶ 17 The defendant did not subsequently file a motion to withdraw guilty plea. He did not appeal from the judgment of conviction.

¶ 18    In September 2020, the defendant filed a timely *pro se* petition for postconviction relief. He claimed that he was actually innocent of the charge to which he had pleaded guilty, and that his public defender "performed deficiently" by failing to investigate his alibi or to locate his alibi witness, Desireé Bell, and by applying "pressure and intimidation" to persuade the defendant to plead guilty. The defendant also repeated his old claim of a conflict of interest between himself and his public defender, stemming from the latter's work as a prosecutor in the defendant's 2001 criminal felony case.

¶ 19    The postconviction petition was supported by two affidavits, one from Dwight Hayes and one from the defendant. In his affidavit, which was undated, Hayes wrote that on October 28, 2017, at approximately 7 p.m., he was at the apartment of a friend, Reginald (last name unspecified), at 735 West Decatur. Reginald and another man, Tyler Perry, were "talking about robbing a pizza guy for money." Tyler Perry used Reginald's phone to order pizzas. Then, Tyler Perry and Reginald left the apartment, and upon their return, the two divided money between them. Afterward, Tyler Perry left the apartment, for good. Sometime later, "some guy showed up by the name Damian." Hayes then left Reginald's apartment, after being told by Reginald that he should "not say anything" if anyone should ask about the robbery. Hayes concluded his affidavit by stating that he recently had seen Reginald again, and Reginald told him "that a Damian Gude was convicted of the robbery that he [Reginald] and Tyler did."

¶ 20    In his own affidavit, the defendant stated that he was with his friend Desireé Bell on October 28, 2017, from 5 to 8:30 p.m., and he told his public defender that Bell could provide him with an alibi. However, his public defender did nothing to pursue this line of defense, telling the defendant that Bell's testimony would not be credible when compared to the victim's. The

7

defendant concluded his affidavit by stating that his guilty plea resulted from his public defender's "pressure and intimidation," rendering his guilty plea involuntary.

¶ 21 In January 2021, the circuit court found that the defendant had stated the gist of a constitutional claim. It advanced the petition to the second stage of postconviction proceedings. Meanwhile, the public defender who represented the defendant during his guilty plea had been elected the Macon County State's Attorney. The court appointed a special prosecutor in this case. The court also appointed a different public defender to represent the defendant in postconviction proceedings.

¶ 22 In October 2021, appointed postconviction counsel filed an amended postconviction petition on behalf of the defendant. The amended petition reiterated the actual-innocence and ineffective-assistance-of-counsel claims of the *pro se* petition, and it incorporated the *pro se* petition. Counsel also filed a memorandum of law in support of the amended petition. Finally, she filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 23 The State, by the special prosecutor, filed a motion to dismiss the amended postconviction petition. In March 2022, the court heard arguments for and against the motion to dismiss. The court denied the motion and advanced the amended petition to the third stage of postconviction proceedings.

¶ 24 The State filed an answer to the amended petition, asking the court to deny the amended petition.

¶ 25 On May 9, 2022, the circuit court held an evidentiary hearing on the defendant's amended postconviction petition. Two witnesses testified for the defense—the defendant and Dwight Hayes.

¶ 26    The defendant testified that at the time of the crime in this case, he was at the home of Desireé Bell, who was hosting a "World Series party." Although the defendant could not remember the exact time that he was at Bell's house, it was "[a]nywhere between 5 and 9" in the evening. During the pretrial stage of his case, the defendant informed his public defender about Bell and the alibi testimony that she could provide for him, but the defendant did not have any contact information on Bell at that time. To his knowledge, his public defender did not do anything to locate Bell, and she never was subpoenaed. The defendant did not have an opportunity to ask his public defender whether he would contact potential witnesses because he "barely seen" him. "Only time I see him," testified the defendant, "is when I came to court." The defendant pleaded guilty in this case because, on the day of trial, he asked for a continuance in order to hire private counsel, but he "was denied the right to do so." He "end[ed] up pleading guilty" because he lacked the defense that he wanted to present. At the time of the plea, he felt "[s]omewhat" coerced into pleading guilty. Also, the defendant thought that his public defender would not present his defense in an appropriate or effective manner, due to counsel's serving as the prosecutor in "an earlier case" in which he was convicted. In short, he pleaded guilty because he feared a worse outcome. If his public defender had reached out to Bell and had done more to investigate the incident that resulted in the charges, he would have proceeded to trial, and would not have pleaded guilty, the defendant stated.

¶ 27    Dwight Hayes testified that he was the person who, of his own free will and without the expectation of any personal gain, submitted an affidavit in support of the defendant's postconviction petition. The affidavit was true and accurate, he said. On October 28, 2017, at a time that Hayes could not specifically remember, he was at the residence of Reginald Penerman. Penerman was there, along with "two other people" who were planning a robbery. The defendant

9

was not one of those two. Penerman "placed an order for pizza." The defendant was not present at that time. Hayes was still at the residence when the police arrived. He could not recall why he did not say anything to the police at the time, or why he had come forward when he did.

¶ 28 During cross-examination by the State, it was established that Hayes was serving a prison sentence for failure to register as a sex offender; he began serving that sentence in December 2018. He had previously served a prison sentence for a separate conviction for that offense, and for an offense of aggravated battery. Hayes said that he was at Reginald Penerman's place with a female "friend," whose name he could not remember. Penerman was also there, along with Penerman's male friend, whose name Hayes could not recall. They were all watching the World Series. At some point, Penerman's male friend phoned for pizza. The defendant was not present at the time. Penerman's male friend left the place, while Penerman, Hayes, and Hayes's female friend stayed behind. Penerman's male friend was gone for a while, but Hayes could not recall for how long. Penerman phoned the defendant. The defendant arrived at Penerman's place just as Hayes and his female friend were leaving. It was at that point that Hayes and the defendant met for the first time. It was also the last time that Hayes saw Penerman. During his imprisonment that began in December 2018, Hayes never had seen Penerman. Hayes did not remember who was in the apartment at the time he left. The next time Hayes saw the defendant was at a prison in Danville, where they were incarcerated.

¶ 29 Other than the testimony of the defendant and Hayes, the only evidence from the defense was an affidavit from the public defender's investigator. In that affidavit, the investigator stated that he had attempted on several occasions, in various ways, to contact Desireé Bell, but he was unsuccessful. The State stipulated to that affidavit.

10

¶ 30    The prosecution, for its part, called the public defender who had represented the defendant during the guilty plea (and who was, by that time, the elected Macon County State's Attorney). Counsel testified that he had reviewed the defense file in the instant case, and it did not include any notes concerning Desireé Bell, or any alibi witness, on the inside cover of that file. If the defendant had given him information concerning an alibi witness, he would have written it there. Before the guilty plea, the defendant never had told counsel that he was unwilling to plead guilty. Counsel never threatened or coerced the defendant into pleading guilty.

¶ 31    At the close of the hearing, the court found that Hayes was "completely unbelievable." The court also had "trouble" in finding the defendant credible. As for the plea of guilty, it was "knowingly, voluntarily, and intelligently made." Counsel was not ineffective in this case. Accordingly, the court denied the defendant's petition. At the defendant's request, the court directed its clerk to file a notice of appeal on his behalf.

¶ 32                                    ANALYSIS

¶ 33    This appeal is from the circuit court's order denying the defendant's amended petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). As previously mentioned, the defendant's appointed attorney on appeal, OSAD, has filed a *Finley* motion to withdraw as counsel, along with a legal memorandum in support of that motion, and the defendant has not filed anything in response. In its memorandum, OSAD suggests two potential issues on appeal: (1) whether the circuit court committed manifest error in denying the postconviction petition and (2) whether postconviction counsel provided the defendant with reasonable assistance pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). This court agrees with OSAD that those issues are meritless.

11

¶ 34                          OSAD's First Potential Issue:
                 Whether the Denial of the Petition Was Manifestly Erroneous

¶ 35    The first potential issue raised by OSAD in its *Finley* memorandum is whether the circuit court committed manifest error in denying the defendant's petition.

¶ 36    The Act provides a method by which any person imprisoned in the penitentiary may challenge his conviction on the grounds that it resulted from a substantial violation of his federal or state constitutional rights.  725 ILCS 5/122-1(a)(1) (West 2020); *People v. Smith*, 2015 IL 116572, ¶ 9.  A proceeding under the Act is a collateral proceeding, at which the conviction is collaterally attacked; it is not an appeal from the judgment of conviction.  *People v. English*, 2013 IL 112890, ¶ 21.  A criminal defendant initiates a proceeding under the Act by filing a petition in the circuit court.  725 ILCS 5/122-1(b) (West 2020).  The proceeding is a three-stage adjudicatory process.  *People v. Pendleton*, 223 Ill. 2d 458, 471-72 (2006).  In the third stage of the process, the circuit court holds an evidentiary hearing, where the defendant must show, by a preponderance of the evidence, that he suffered a substantial violation of his constitutional rights in the proceedings that resulted in the conviction.  *People v. Brickhouse*, 2018 IL App (3d) 150807, ¶ 38.  At that evidentiary hearing, the court is the finder of fact; it resolves evidentiary conflicts, weighs the credibility of witnesses, and determines the weight to be given testimony and other evidence.  *People v. Domagala*, 2013 IL 113688, ¶ 34.  In short, it is the circuit court that determines whether the defendant has produced evidence demonstrating that he is entitled to postconviction relief.  Appellate review of the third-stage denial of a postconviction petition, where fact-finding and credibility determinations are involved, is for manifest error.  *Pendleton*, 223 Ill. 2d at 473.  Manifest error is error that is clearly evident, plain, and indisputable.  *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997).

12

¶ 37    In his petition, and at the evidentiary hearing, the defendant presented three claims: (1) actual innocence, based on the newly discovered evidence of Dwight Hayes's statement; (2) ineffective assistance of plea counsel for failure to investigate an alibi; and (3) ineffective assistance of plea counsel for coercing him into accepting the State's plea offer.  This court will consider each of these claims in turn.

¶ 38    A freestanding claim of actual innocence, based on newly discovered evidence, may be asserted in a postconviction petition.  *People v. Washington*, 171 Ill. 2d 475, 489 (1996).  In terms of substance, the evidence in support of that claim must be (1) newly discovered, (2) material, (3) not merely cumulative, and (4) "of such conclusive character that it would probably change the result on retrial."  *People v. Morgan*, 212 Ill. 2d 148, 154 (2004).

¶ 39    At the evidentiary hearing in this case, the defendant's actual-innocence claim depended entirely on the testimony of Dwight Hayes, a DOC inmate who, over the years, had been convicted of multiple felonies.  The circuit court found that Hayes was "completely unbelievable," a finding that was within the court's role as finder of fact and weigher of credibility.  This finding was (more than) justified by the content of Hayes's testimony, which had various holes in it and various contradictions with his written affidavit, filed in support of the defendant's postconviction petition.  For example, Hayes testified that he could not remember the name of the female "friend" he was with during his time at Penerman's apartment on October 28, 2017.  There was no testimony about Penerman and Tyler Perry dividing money (the proceeds of the robbery) between them, even though the dividing of money had been a key part of Hayes's affidavit.  Hayes also testified that he last saw Penerman on October 28, 2017, though in his (undated) affidavit, he wrote that he had "recently" seen Penerman, and Penerman told him on that occasion "that a Damian Gude was convicted of the robbery that he [Penerman] and Tyler did."  These and other weaknesses in

13

Hayes's testimony at the evidentiary hearing resulted in the circuit court's utter disbelief in that testimony. The defendant failed to show, by a preponderance of the evidence, that he was actually innocent of the armed robbery.

¶ 40     In regard to the defendant's postconviction claims that his plea counsel was connotationally ineffective for failing to investigate an alibi defense, and for coercing him into accepting the State's plea offer, the circuit court was right in determining that the defendant had failed to produce sufficient evidence in support of these claims.

¶ 41     To show ineffective assistance, a defendant must demonstrate both (1) that his attorney's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that the attorney's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To demonstrate prejudice, a defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Id.* at 694. Failure to satisfy either prong of the *Strickland* test will defeat a claim of ineffective assistance. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001).

¶ 42     At the defendant's postconviction evidentiary hearing, the defendant testified that he was with Desireé Bell, attending a party at her home, during the evening of October 28, 2017, the time of the armed robbery. The defendant further testified that he had informed plea counsel, pretrial, of Bell's existence and of her ability to provide him with an alibi, though he did not know how to contact her at that time. Also at the evidentiary hearing, the defendant's plea counsel testified, for the State, that he had no personal recollection, and no notes written in his case file, indicating that the defendant ever had mentioned Bell or her alibi. Bell did not testify; the public defender's investigator was unable to locate her for the evidentiary hearing. In deciding whether the defendant had actually proved, by a preponderance of the evidence, that plea counsel knew about but failed

14

to investigate this alibi, the circuit court needed to weigh credibility. Specifically, it needed to weigh the credibility of the defendant and his plea counsel. The court, as the finder of fact, found plea counsel more credible. This finding was further supported by the fact that the defendant did not mention Bell or counsel's inattention to his alibi defense at any time prior to the filing of the postconviction petition. The defendant did not mention Bell or the alibi, and did not mention that he had informed plea counsel about them, at either the April 2018 guilty-plea hearing or at the June 2018 hearing on the defendant's postplea complaints about counsel.

¶ 43    As for the defendant's claim that plea counsel had coerced him into accepting the State's offer, the court did not err in rejecting the claim. At the evidentiary hearing, the defendant testified, essentially, that plea counsel did coerce him, and plea counsel testified, essentially, that he did not coerce him. Here, too, the circuit court found plea counsel more credible. Furthermore, the transcript of the guilty-plea hearing, which the circuit court reviewed, did not give any indication that the defendant's plea was coerced. To the contrary, the court at the plea hearing thoroughly questioned the defendant about voluntariness and found that his plea was voluntary.

¶ 44    In short, the circuit court did not commit manifest error when it determined that the defendant had failed to establish ineffective assistance—whether for failing to investigate the defendant's alibi or for coercing him to plead guilty. There was no manifest error in the denial of the postconviction petition.

¶ 45                    OSAD's Second Potential Issue:
              Whether Postconviction Counsel Provided Reasonable Assistance

¶ 46    The second potential issue raised by OSAD is whether postconviction counsel provided the defendant with reasonable assistance pursuant to Rule 651(c). A postconviction petitioner is entitled to only a reasonable level of assistance from his postconviction attorney; Rule 651(c) is simply a means of assuring that level of assistance. *People v. Cotto*, 2016 IL 119006, ¶ 41.

15

Substantial compliance with Rule 651(c) is sufficient. *People v. Richardson*, 382 Ill. App. 3d 248, 257 (2008). Whether postconviction counsel provided reasonable assistance in compliance with Rule 651(c) is a question that is reviewed *de novo*. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007).

¶ 47 Along with an amended postconviction petition and a memorandum of law in support thereof, postconviction counsel filed a certificate of compliance with Rule 651(c). In that certificate, which was filed in October 2021, counsel certified that she had (1) consulted with the defendant "through mail and by phone to ascertain his contentions of deprivation of his constitutional rights," (2) "examined the record of the trial court proceedings and transcripts," and (3) "made amendments to the petition filed *pro se* that are necessary for an adequate presentation of [the defendant's] contentions." As OSAD rightly acknowledges in its *Finley* memorandum of law, counsel's certificate "mirrors the language" in Rule 651(c) itself.

¶ 48 When counsel files a facially valid Rule 651(c) certificate, it creates a rebuttable presumption that counsel provided reasonable assistance. *People v. Quezada*, 2022 IL App (2d) 210076, ¶ 14. Once that presumption is established, the defendant bears the burden of demonstrating that counsel failed to substantially comply with the rule. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. Here, the record does not reveal anything that rebuts that presumption. (As mentioned previously, the defendant did not file with this court any sort of response to OSAD's *Finley* motion.)

¶ 49 Furthermore, and apart from postconviction counsel's compliance with Rule 651(c), counsel provided a reasonable level of assistance at the May 9, 2022, evidentiary hearing. For example, she tried to obtain Desireé Bell's alibi testimony by having the public defender's investigator repeatedly try to contact Bell. She tried to rehabilitate Dwight Hayes's (nearly disastrous) testimony by, *e.g.*, asking him questions that allowed him to confirm that his memory

16

was better at the time he wrote his affidavit than it was at the time of his testimony. Nothing in the record suggests an unreasonable level of assistance.

¶ 50                               CONCLUSION

¶ 51    At the third-stage evidentiary hearing, the defendant failed to establish his postconviction claims of actual innocence and ineffective assistance of plea counsel. The court did not err manifestly in denying his petition. Also, postconviction counsel provided the defendant with a reasonable level of assistance. No arguments to the contrary would have merit. Therefore, OSAD's *Finley* motion to withdraw as counsel is granted, and the circuit court's judgment, denying the defendant's postconviction petition following an evidentiary hearing, is affirmed.


¶ 52    Motion granted; judgment affirmed.