NOTICE
Decision filed 01/06/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 220408-U

NO. 5-22-0408

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 16-CF-167 |
| | ) | |
| WILLIAM FRAKES, | ) | Honorable |
| | ) | Kevin S. Parker, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1  *Held*:  The trial court conducted an adequate *Krankel* inquiry into the defendant's *pro se* posttrial claims of ineffective assistance of counsel, and the trial court's conclusion that the defendant did not demonstrate arguable neglect of the defendant's case was not manifestly erroneous. The State presented sufficient evidence to prove the defendant guilty beyond a reasonable doubt of child pornography. The defendant failed to establish that his trial counsel provided ineffective assistance in eliciting inadmissible hearsay when cross-examining an investigator and in failing to object to the lack of foundation for the investigator's testimony. The defendant failed to establish that the evidence was so closely balanced that the trial court's error in questioning the jurors about their understanding and acceptance of the *Zehr* principles constituted plain error under the first prong of the plain-error doctrine. The judgment is affirmed.

¶ 2  The defendant, William Frakes, was convicted of three counts of child pornography, and he was sentenced to a total of 18 years in prison. In his original appeal, the defendant raised four claims of error, including a claim that the trial court failed to inquire into his *pro se* posttrial

1

allegations of ineffective assistance of trial counsel. We remanded the case to the trial court with directions to conduct a preliminary inquiry into those allegations pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984) and declined to address the defendant's other claims of error until the *Krankel* proceeding concluded. *People v. Frakes*, 2021 IL App (5th) 170434-U. On remand, the trial court conducted an inquiry into the defendant's *pro se* claims of ineffective assistance of counsel and found that the defendant failed to show possible neglect of his case by trial counsel.

¶ 3      In this appeal, the defendant challenges the trial court's finding that he failed to demonstrate possible neglect of his case by trial counsel, and he argues, in the alternative, that the trial court conducted an inadequate *Krankel* inquiry. He seeks a remand for the appointment of new counsel to investigate and litigate his claims of ineffective assistance of trial counsel. In addition, the defendant reasserts the issues raised but not decided in his prior appeal. The defendant claims that the State failed to present sufficient evidence to prove him guilty beyond a reasonable doubt; that the trial court violated Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) by failing to ask prospective jurors whether they understood and accepted all four principles set forth in *People v. Zehr*, 103 Ill. 2d 472 (1984); and that he received ineffective assistance of counsel when trial counsel failed to object to the foundation for an investigator's testimony and elicited inadmissible hearsay testimony at trial. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5      On September 25, 2015, Sergeant Scott Workman, a police officer assigned to the Illinois Attorney General's Internet Crimes Against Children Task Force, received a report that three images of child pornography had been uploaded to an online photo sharing website from an email account associated with the defendant. Workman obtained a warrant to seize the defendant's cell

2

phone and other devices. Three thumbnail images of child pornography were found during a forensic analysis of the content of the defendant's cell phone.

¶ 6     On July 18, 2016, the State charged the defendant by information with three counts of child pornography that allegedly occurred between May 26, 2015, and May 4, 2016. The State filed an amended information on December 27, 2016. Count I alleged that the defendant "knowingly obtained a photograph of a child depicted as being bound, actually or by simulation, whom the defendant would have reason to know is under 13 years of age, *** depicting a child sitting on a cushioned couch/chair with vagina visible, while holding her handcuffed hands up in the air," in violation of section 11-20.1(a)(1)(vi) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-20.1(a)(1)(vi) (West 2014)). Count II alleged that the defendant "knowingly obtained a photograph of a child depicted as being bound, actually or by simulation, whom the defendant would have reason to know is under 13 years of age, *** depicting a child laying on her back on a bed, the female child has her hands above her head, and her legs are spread apart tied to a metal bar with yellow rope, and with her vagina visible," in violation of section 11-20.1(a)(1)(vi) of the Code (720 ILCS 5/11-20.1(a)(1)(vi) (West 2014)). Count III alleged that the defendant, with knowledge of the nature thereof, possessed a photograph "of a child whom the defendant reasonably should have known to be under the age of 13 years of age, *** which did show a white female approximately 10-12 years of age laying nude on her back, the child appears to be laying on a bed while she is holding her right leg up in the air with her vagina visible," in violation of section 11-20.1(a)(6) of the Code (720 ILCS 5/11-20.1(a)(6) (West 2014)).

¶ 7     The defendant entered a plea of not guilty and demanded a speedy jury trial. The trial commenced on February 20, 2017. An overview of the evidence presented at trial follows.

3

¶ 8    In May 2015 the defendant and his wife, Allison Frakes, lived in a house on East Johnson Street in Vandalia, Illinois. At that time, one of the defendant's daughters, Angel Kopp, had a cellular phone plan with AT&T. Kopp's cell plan covered the cell phones of seven family members, including the defendant. Kopp testified that the defendant had a Samsung cell phone and all other family members had iPhones. Kopp recalled that the defendant had his Samsung phone for about a year. The defendant got a new iPhone in November 2015 because his Samsung phone would not hold a charge. Kopp did not use the defendant's Samsung phone, and she never saw anyone else use it. Kopp identified a cell phone marked as People's Exhibit 1 as the defendant's Samsung cell phone. Kopp testified that she frequently visited her parents' home in 2015. Kopp testified that the defendant worked as a tour bus driver. She observed that the defendant customarily brought his cell phone and a laptop with him when he went on work trips. She noted that the laptop was protected by a password.

¶ 9    The defendant's wife, Allison Frakes, testified that the defendant had one cell phone and that it was common for the defendant to have his phone at work. The defendant also had five laptop computers. He used one for record keeping. Allison recalled that the defendant took his cell phone and a laptop on a work trip shortly before the police executed the search warrant. She denied telling the investigating officer that the defendant came home from that trip without his cell phone and laptop. Allison identified the defendant's cell phone number as ***-***-3040.[1]

¶ 10   Vickie Kettler, a human resources and compliance manager for Huskey Trailways, testified that the defendant worked as a tour driver for the company in May 2015. Kettler identified the defendant's employment file. She noted that the defendant had completed an employee

---

[1]Allison Frakes testified to the defendant's complete cell phone number. The defendant's complete cell phone number will not be provided in this disposition. Instead, it will be referred to it as "the 3040-cell number."

information sheet, and he provided the 3040-cell number as his contact phone number. Kettler indicated that Huskey Trailways kept current cell numbers for the drivers so that the dispatcher could contact them while they were traveling. In accordance with the policies of Huskey Trailways, drivers were permitted to carry cell phones at work. When transporting tour groups, the driver was not permitted to use the cell phone unless it was a hands-free device. Company policy also provided that when a driver stopped for a break and exited the bus, all passengers were supposed to be off the bus and the bus was locked. Kettler met with the defendant about 20-30 times during his employment with Huskey Trailways. She remembered seeing the defendant with a cell phone of a similar size to the cell phone marked as People's Exhibit 1. She did not recall seeing him with a computer.

¶ 11    Kettler identified a driver's log and a company scheduling report of the jobs that the defendant worked while employed by Huskey Trailways, and those documents were admitted into evidence. According to the company scheduling report, the defendant was assigned to drive a tour group to Boonville, Missouri, on May 26, 2015. Kettler also identified a driver's log that the defendant completed. The log indicated the defendant was on duty on May 26, 2015. He picked up his tour group in Columbia, Illinois, at 5:30 a.m., and he dropped them off at Isle of Capri in Boonville, Missouri, at 9:32 a.m. The defendant picked up his tour group at 11:30 a.m., and he drove them to Warm Springs Ranch in Boonville, at noon. The defendant picked the group up at 4 p.m. and returned them to Columbia Illinois at 7:14 p.m. Kettler noted that though the time zone was not listed on the driver's log, the drivers were directed to use central time because they began their trips in the central time zone.

¶ 12    Sergeant Scott Workman testified that he was a member of the Greenville Police Department, assigned to the Illinois Attorney General's Internet Crimes Against Children Task

Force as an investigator. Workman's duties included investigating child pornography and internet crimes involving children. Workman also served as a network intrusion specialist and computer forensic specialist for the United States Secret Service. Workman stated that he received training in computer forensics, cell phone forensics, and network intrusion. In addition, he attended a basic scripting class and had some social media training. Throughout his career, he had recovered data from hundreds of computers and hundreds of cell phones.

¶ 13    Workman received a report from the National Center for Missing and Exploited Children (NCMEC) on September 25, 2015. According to the report, NCMEC received a cyber tip that images of child pornography had been uploaded to an online photo sharing and storage platform called Flickr from a specific Yahoo email address, angelsteven23@yahoo.com. The NCMEC report included a cell phone number, a secondary email, and a date of birth associated with the angelsteven23 account. The cell phone number was the defendant's 3040-cell number. The recovery email address was billss1960@yahoo.com, and the date of birth was September 1, 1987. The report also provided the following information associated with the billss1960 email address: a name—Bill Frakes; the defendant's residential address on East Johnson Street in Vandalia, Illinois; the defendant's 3040-cell number; and a date of birth—September 1, 1960. The report included the three photos that had been uploaded to Flickr. Workman viewed the photos with file names, image.435, image.390, and image.391. Each image appeared to be child pornography. Workman opened an investigation. Subsequently, he obtained a search warrant for the defendant's residence on East Johnson Street in Vandalia, Illinois.

¶ 14    On May 2, 2016, Workman went to the East Johnson address to execute the search warrant. The defendant was not at home. Workman spoke with the defendant's wife, Allison Frakes, and then began to search the residence. Workman observed a Samsung Galaxy Mega cell phone and

other electronic devices. Workman tried to turn the Samsung phone on. It would not power up, but there was no apparent damage to it. Workman did not secure the Samsung phone that day, noting that the Vandalia Police Department had gotten a second search warrant that included other electronic devices. Before the second search warrant was executed, Workman contacted Joseph Purfield, a special agent with the Pennsylvania Attorney General's Office, and asked him to examine the Samsung phone. Workman informed Purfield that the phone would not power up. Purfield had an extra level of training in forensic analysis and data recovery, and he agreed to examine the phone. Workman identified the cell phone marked as People's Exhibit 1 as the Samsung cell phone that was seized from the defendant's residence.

¶ 15    On May 4, 2016, Todd Emerick, a Vandalia police officer, executed the second warrant and seized the Samsung Galaxy Mega cell phone and a USB cord. Emerick secured those items in an evidence locker at the Vandalia Police Department. Emerick identified the cell phone marked as People's Exhibit 1 as the Samsung cell phone that he secured during the search of the defendant's residence. The Samsung cell phone was delivered to Purfield for analysis and then returned to the Vandalia Police Department.[2]

¶ 16    As part of the investigation, Workman sent a subpoena to Yahoo for records regarding the angelsteven23 email account. In response, Yahoo provided a flash drive containing records and a business records declaration from Yahoo's custodian of records. During cross-examination, defense counsel questioned Workman about the content of the records. Workman noted that Yahoo's records indicated that the angelsteven23 email account was created on April 24, 2011, and deactivated on September 14, 2015. The records identified verified alternative communication

---

[2]Prior to the presentation of testimony, the parties had stipulated to the chain of custody of the defendant's Samsung cell phone once it was in the possession of law enforcement officers.

channels as billss1960@yahoo.com and the defendant's 3040-cell phone number. The account also identified a postal zip code in Vandalia, Illinois. Upon further questioning, Workman testified that the Internet Protocol (IP) address at the defendant's home consisted of four numerical segments beginning with "63" (the 63 IP address). Bill Frakes was the account holder for the 63 IP address. Workman explained that an IP address is used to identify and locate a device on a network. He noted that the IP address for a mobile cell phone can change because the cell phone connects to the nearest cell tower as it moves from one location to another. The Yahoo records included an account management page. Workman learned that the account management page contained changes made to an email account, such as a password change, along with the dates and times of the changes and the IP address used when the changes were made. The account management page does not record each time a user logs onto the account. Workman reviewed the accounts management page and found no changes to the angelsteven23 account on May 26, 2015.

¶ 17    Workman testified that three child pornography images were uploaded to Flickr by the angelsteven23 account on May 26, 2015, between 15:09 and 15:16 UTC (Coordinated Universal Time). He explained that UTC is a standard used to establish time zones, and that during the month of May, the central time zone is five hours behind UTC. Workman testified that the images were uploaded to Flickr between 10:09 a.m. and 10:15 a.m. central time on May 26, 2015. The defendant's work logs showed that the defendant had dropped his tour group off at the Isle of Capri in Boonville, Missouri, at 9:32 a.m. and picked them up at 11:30 that same morning. Workman testified that the child pornography images were uploaded from a mobile device with an IP address that started with a 166. The 166 IP address was different than the IP address at the defendant's home. Workman subpoenaed records from AT&T regarding the 166 IP address. In response, AT&T indicated that the 166 IP address was associated with a mobile device and that it had no

8

current information regarding that IP address. Because it was a mobile device, it did not have a home IP address.

¶ 18    Workman testified that the Flickr account was associated with the angelsteven23 account. Flickr removed the child pornography images and shut down the account on September 24, 2015. The Yahoo records showed that the angelsteven23 account was deactivated on September 14, 2015, and that the last login for the angelsteven23 account was on August 24, 2015, from the 63 IP address at the defendant's residence. The defense moved for admission of the Yahoo records and the business records declaration from Yahoo's custodian of records that accompanied the records. The motion was granted without objection.

¶ 19    Joseph Purfield worked as a Special Agent for the Pennsylvania Office of the Attorney General, and he was assigned to the computer forensics unit. Purfield had extensive training in the field of computer and cell phone forensics and data recovery, and that he had been qualified as an expert in those fields. Purfield was also certified in fixing electronic devices. He was knowledgeable about tools used to extract data and to identify artifacts left on mobile devices.

¶ 20    Purfield testified that Workman asked him to examine the Samsung cell phone to see if he could return the phone to a functional state and to retrieve information from it. Workman described three photos containing child pornography and asked Purfield to search the phone's data for those images. When Purcell received the cell phone, he noted that it did not power on and that it would not charge. Purfield used an extra power supply to provide sufficient power to the cell phone to operate it in a low power mode. The cell phone could not connect to a network in low power mode. Purfield extracted all content, both deleted and undeleted, from the phone. After the first acquisition, Purfield used a supplemental charger to charge the battery. He reinstalled the battery and turned on the device. Purfield performed a second acquisition to obtain data in active files

9

present on the device, such as contacts, call history and calendar events. Purfield also extracted content from the phone's Subscriber Identity Module (SIM) card.

¶ 21    Following the extraction process, Purfield used a software program to categorize all of the deleted and undeleted information obtained from the cell phone. The categories include pictures, text messages, calendars, contacts, GPS, and web history. Approximately 15,000 images were recovered from the cell phone. Purfield viewed all of the images. He identified the three images described by Workman. Purfield testified that these images were recovered from thumbnail files on the cell phone. Purfield explained that the photos originally existed in the cell phone's download folder and they were deleted after an unknown amount of time. Although the original photos had been deleted, smaller images of those photos existed in thumbnail files which were not visible to the naked eye. Purfield explained that he was able to recover the images from the thumbnail cache because the original photos had existed in the download folder of the cell phone. Purfield testified that it takes affirmative action to delete photos. He had never seen child pornography on a device without specific user creation or manipulation.

¶ 22    Purfield also discovered remnants of the Flickr application on the Samsung cell phone. The Flickr application had been installed on the cell phone and later uninstalled. In the interim, the application had been opened several times. The Flickr website had also been accessed through the cell phone. The data revealed more than six hundred instances in which the application or website was visited and different messages and images were reviewed. Purfield testified that the three child pornography photos uploaded to Flickr on May 26, 2015, were associated with an account ID. The Flickr account ID was recovered from the cell phone data. Purfield also found that the cell phone owner's name was Bill Frakes. The name Bill Frakes was associated with the email address, billss1960@yahoo.com, and several other accounts, including Facebook and Google. Purfield did

10

not find any file or application indicating that the cell phone had been hacked. Purfield identified the cell phone marked as People's Exhibit 1 as the cell phone he received from Workman.

¶ 23    During cross-examination, Purfield acknowledged that his forensic examination did not determine who was using the cell phone when the child pornography was uploaded to Flickr. Purfield did not find indications of any child pornography websites on the cell phone, and he did not identify the origin of the child pornography photos. Workman created a disc of the child pornography images that Purfield recovered from the cell phone. The disc was admitted into evidence and the images were published to the jury.

¶ 24    The State advised the trial court it had no further witnesses or evidence to present and it rested. The defendant's motion for a directed verdict was denied. The trial court admonished the defendant regarding his right to testify. The defendant informed the court that he had spoken with his attorney and that he did not want to testify. The defense rested. The jury deliberated and returned guilty verdicts on all three counts of child pornography.

¶ 25    On April 3, 2017, the defense filed a posttrial motion. On April 11, 2017, the defendant sent a letter to the trial court. The letter contained claims of ineffective assistance of trial counsel. At a hearing on April 13, 2017, the trial court noted that it had received the defendant's letter. The defendant requested to speak, but the trial court indicated that the court would first hear from the defendant's attorney, followed by the State, and the defendant could speak after that. The defendant's attorney, Robert Bas, notified the trial court that a disagreement had arisen between he and the defendant, and that the defendant indicated that he was going to retain new counsel. The trial court asked the defendant if that was correct. The defendant agreed that it was. The court asked the defendant if he had any objection to attorney Bas withdrawing. The defendant stated, "No. I have actually fired him. I don't want him as my attorney." On April 17, 2017, attorney Bas

11

was granted leave to withdraw, and Monroe McWard entered his appearance as defendant's counsel. The trial court did not address the defendant's ineffective assistance claims at the hearing.

¶ 26    The sentencing hearing was held on June 9, 2017. At that time, attorney McWard advised the trial court that he was adopting the posttrial motion previously filed. The trial court denied the defendant's posttrial motion and proceeded with sentencing. After considering the evidence presented in aggravation and mitigation, the sentencing recommendations by each party, and the defendant's statement in allocution, the court sentenced the defendant to seven years in prison on count I, seven years in prison on count II, and four years in prison on count III. The sentences were to be served consecutively, totaling 18 years in prison. Subsequently, the court denied the defendant's motion to reconsider his sentence and his second motion to reconsider sentence.

¶ 27    In his initial appeal, the defendant asserted that the trial court erred in failing to conduct a preliminary inquiry into his claims of ineffective assistance of trial counsel pursuant to *Krankel*, 102 Ill. 2d 181. The State conceded that the defendant's letter was sufficient to initiate a *Krankel* inquiry. The case was remanded with directions to the trial court to conduct an inquiry into the defendant's allegations of ineffective assistance of counsel pursuant to *Krankel*. *Frakes*, 2021 IL App (5th) 170434-U.

¶ 28    On January 21, 2022, the trial court conducted a preliminary inquiry into the defendant's claims of ineffective assistance. The defendant appeared with attorney McWard. Attorney Bas was also present. Both the defendant and Bas testified under oath. The trial court asked the defendant about each of the claims raised in his April 11, 2017, handwritten letter. Thereafter, attorney Bas was allowed to respond to the defendant's claims. On May 26, 2022, the trial court issued an order denying the defendant's *pro se* claims of ineffective assistance of counsel. The defendant filed this

12

appeal challenging the trial court's order of May 26, 2022. The defendant also reasserts the issues raised but not decided in his prior appeal.

¶ 29                                I. ANALYSIS

¶ 30                        Sufficiency of the Evidence

¶ 31    The defendant claims the State failed to prove him guilty beyond a reasonable doubt of all three counts of child pornography. The defendant does not dispute that the images found on his phone constituted child pornography. The defendant argues that the State failed to prove that he knowingly and voluntarily possessed the child pornography because there was no evidence to show how the photos came to be on his phone or when they were deleted.

¶ 32    When reviewing a challenge to the sufficiency of the evidence, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts presented at trial. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). When faced with a challenge to the sufficiency of the evidence, the reviewing court will not retry the defendant, and it will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Jones*, 2023 IL 127810, ¶ 28. All reasonable inferences must be drawn in favor of the State. *Jones*, 2023 IL 127810, ¶ 28. A defendant's conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of his guilt. *Jones*, 2023 IL 127810, ¶ 28.

13

¶ 33　The defendant was convicted of two counts of child pornography pursuant to section 11-20.1(a)(1) of the Criminal Code of 2012 (720 ILCS 5/11-20.1(a)(1)(vi) (West 2014)). Section 20.1(a)(1)(vi) provides that a person commits child pornography when that person:

"(1) films, videotapes, photographs, or otherwise depicts or portrays by means of any similar visual medium or reproduction or depicts by computer any child whom he or she knows or reasonably should know to be under the age of 18 *** where such child *** is:

\* \* \*

(vi) actually or by simulation portrayed or depicted as bound, fettered, or subject to sadistic, masochistic, or sadomasochistic abuse in any sexual context." 720 ILCS 5/11-20.1(a)(1)(vi) (West 2014).

¶ 34　The defendant was also convicted of one count of child pornography pursuant to section 11-20.1(a)(6) of the Code (720 ILCS 5/11-20.1(a)(6) (West 2014)). Section 11-201(a)(6) provides that a person commits child pornography when that person:

"(6) with knowledge of the nature or content thereof, possesses any film, videotape, photograph or other similar visual reproduction or depiction by computer of any child *** whom the person knows or reasonably should know to be under the age of 18 ***, engaged in any activity described in subparagraphs (i) through (vii) of paragraph (1) of this subsection." 720 ILCS 5/11-20.1(a)(6) (West 2014).

Section 11-20.1(b)(5) of the Code (720 ILCS 5/11-20.1(b)(5) (West 2014)) provides:

"(5) The charge of child pornography does not apply to a person who does not voluntarily possess a film, videotape, or visual reproduction or depiction by computer in which the pornography is depicted. Possession is voluntary if the defendant knowingly

14

procures or receives a film, videotape, or visual reproduction or depiction for a sufficient time to be able to terminate his or her possession." 720 ILCS 5/11-20.1(b)(5) (West 2014).

¶ 35    "Possession is generally defined as '[t]he fact of having or holding property in one's power; the exercise of dominion over property,' with courts frequently including 'control' over property within the definition." *People v. Josephitis*, 394 Ill. App. 3d 293, 299 (2009) (quoting Black's Law Dictionary 1201 (8th ed. 2004)). Under this definition, possession may be established "by either proof of actual and knowing physical possession or constructive possession." *Josephitis*, 394 Ill. App. 3d at 299.

¶ 36    In this case, the evidence presented at trial indicated that the defendant had possession of his Samsung Galaxy cell phone for approximately one year, including the period from May 26, 2015, through November 2015. No one else used or accessed the defendant's cell phone. The child pornography images were uploaded to Flickr from the angelsteven23 email account on May 26, 2015. The verified communication channels for the angelsteven23 email account were the defendant's 3040-cell number and the billss1960 email address. The identifiers on the billss1960 email account included the name of Bill Frakes, the defendant's 3040-cell number, the defendant's residential address on East Johnson Street in Vandalia, and the defendant's date of birth of September 1, 1960. Based upon the evidence and reasonable inferences therefore, the trier of fact could find that the angelsteven23 was one of the defendant's email accounts.

¶ 37    The child pornography photos were uploaded to Flickr from the angelsteven23 email account between 10:09 a.m. and 10:16 a.m. on May 26, 2015. The records from the defendant's employer showed that he was in Boonville, Missouri on May 26, 2015, and that he dropped his tour group at the Isle of Capri at 9:32 a.m., and he picked them up at 11:30 a.m. The defendant regularly carried his cell phone on work trips. The child pornography images were uploaded to

Flickr by the angelsteven23 email through an IP address associated with a mobile device and not through the IP address at the defendant's home. Images of the three child pornography photos that had been uploaded to Flickr were found in thumbnail files on the defendant's Samsung cell phone. Agent Purfield explained that the original photos had existed in the cell phone's download folder. The thumbnail images were created when the original child pornography photos were deleted. Purfield's forensic analysis also revealed that the Flickr application had been deleted from the defendant's cell phone, and that the Flickr application and the Flickr website had been accessed several hundred times from the defendant's phone. The evidence does not indicate that the defendant encountered these photos inadvertently. Purfield testified that it took affirmative acts by the user to upload, download, and delete the photos and the application from the phone. The cell phone showed no signs that it had been hacked or accessed remotely. Viewing this evidence and reasonable inferences therefrom in the light most favorable to the State, the jury could reasonably find that the defendant knowingly and voluntarily possessed the three child pornography images found on his cell phone. Thus, there is sufficient evidence for the jury to find the defendant guilty of child pornography beyond a reasonable doubt.

¶ 38                    Compliance with Illinois Supreme Court Rule 431(b)

¶ 39    The defendant also claims that the trial court failed to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) by failing to ask the potential jurors during *voir dire* whether they understood and accepted all four principles set forth in *People v. Zehr*, 103 Ill. 2d 472, 477 (1984). The defendant acknowledges that the error was not preserved. He claims that the evidence was closely balanced and seeks review under the first prong of the plain-error doctrine. The State agrees that the trial court failed to comply with Rule 431(b), and that the defendant failed to preserve the

16

error. The State argues that the defendant's procedural default should be honored because the evidence was not closely balanced.

¶ 40    Rule 431(b) requires the trial court to ask each potential juror whether he or she understands and accepts (1) that the defendant is presumed innocent of the charges against him, (2) that before a defendant can be convicted the State must prove him guilty beyond a reasonable doubt, (3) that the defendant is not required to offer any evidence on his own behalf, and (4) that the defendant's failure to testify cannot be held against him. Ill. S. Ct. R. 431(b) (eff. July 1, 2012). Rule 431(b) "mandates a specific question and response process" to ensure that the jurors understand and accept each enumerated principle. *People v. Thompson*, 238 Ill. 2d 598, 607 (2010). A trial court's failure to inquire into a potential juror's acceptance and understanding of all four *Zehr* principles constitutes error. *Thompson*, 238 Ill. 2d at 607. Thus, asking potential jurors whether they have a "problem with" or "disagree with" the principles, rather than whether they understand and accept them is error. *People v. Sebby*, 2017 IL 119445, ¶ 49. This court reviews a purported error under Rule 431(b) *de novo*. *People v. Belknap*, 2014 IL 117094, ¶ 41.

¶ 41    At the beginning of *voir dire*, the trial court explained that the defendant was presumed innocent of all three charges brought against him. The court then questioned the first panel of 14 prospective jurors about the *Zehr* principles.

> "[THE COURT: ]There's a couple propositions of law that I want to mention to you and ask you to—if you have any difficulty accepting these following propositions of law.
>
> We have mentioned this a couple times, but I need you to know that the defendant, Mr. Frakes, is presumed innocent of these charges. And that presumption carries with him throughout all of these proceedings until you reach a verdict. Does anybody not understand that proposition of law or cannot accept that? Okay.
>
> Before Mr. Frakes can be found—can be convicted, the State must prove him guilty beyond a reasonable doubt. Does anybody have any quarrel with that proposition of law?

You understand that Mr. Frakes, as he sits there today, does not—is not required, does not need to offer any—any evidence on his own behalf in his defense. Do you understand that?

And should Mr. Frakes choose not to testify in these proceedings, his failure to testify cannot raise any inference or assumption on your part. Do you understand that as well?

Is there anything about this case or anything about your own person that you believe will prevent you or interfere with you being impartial here today and listening to all of the evidence as its presented to you?"

¶ 42    The record does not reflect that the prospective jurors responded to the trial court's questions. In addressing the second panel of prospective jurors, the trial court indicated it was going to instruct again on certain legal propositions. The trial court stated that it was "simply going to ask if everybody understands what they are and whether anybody has any problem or takes any exception in being able to follow these propositions of law. Okay." The trial court then recited the four principles of law set forth in Rule 431(b), but the court did not ask the prospective jurors whether they understood and accepted each of the four principles. And again, the record does not reflect that the prospective jurors responded or otherwise indicated that they understood and accepted the four principles. Thus, the trial court was required to ask each prospective juror whether he or she understood and accepted each of the principles in Rule 431(b), and the court's failure to do so was error. *Thompson*, 238 Ill. 2d at 607.

¶ 43    The defendant did not object to the trial court's admonishments at the time they were given and did not include the claim of error in a posttrial motion. As a result, this claim was forfeited. *Sebby*, 2017 IL 119445, ¶ 48. Nevertheless, Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides that plain errors or defects affecting substantial rights "may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Under the plain-error doctrine, a reviewing court may consider unpreserved error when "(1) a clear or obvious

error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). Defendants carry the burden of persuasion under plain-error review. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

¶ 44    Here, the defendant seeks review under the first prong of plain error. We have already determined that the trial court's failure to comply with Rule 431(b) was a clear error. Next, we must determine whether the evidence was so closely balanced that the error alone threatened to tip of the scales of justice against the defendant. In making this determination, the reviewing court must evaluate "the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53. This inquiry involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility. *Sebby*, 2017 IL 119445, ¶ 53.

¶ 45    After assessing the totality of the evidence within the context of this case, we conclude that the defendant did not meet his burden to establish that the evidence was closely balanced. The defendant did not dispute that the three images uploaded to Flickr constituted child pornography. The evidence presented at trial showed that the defendant owned and had possession of his Samsung Galaxy cell phone for approximately one year, including the period from May 26, 2015, through November 2015. No one else used or accessed the defendant's cell phone. The child pornography images were uploaded to Flickr from the angelsteven23 email account on May 26, 2015. The verified communication channels for the angelsteven23 email account were the

19

defendant's 3040-cell number and the billss1960 email address. The identifiers on the billss1960 email account included the name of Bill Frakes, the defendant's 3040-cell number, the defendant's residential address on East Johnson Street in Vandalia, and the defendant's date of birth of September 1, 1960.

¶ 46 Sergeant Workman testified that the child pornography photos were uploaded to Flickr from the angelsteven23 email account between 10:09 a.m. and 10:16 a.m. on May 26, 2015. The records from the defendant's employer showed that he was in Boonville, Missouri on May 26, 2015, and that he dropped his tour group at the Isle of Capri at 9:32 a.m., and he picked them up at 11:30 a.m. The defendant regularly carried his Samsung cell phone on work trips. The child pornography photos were uploaded to Flickr by the angelsteven23 email through an IP address associated with a mobile device and not the IP address at the defendant's home. Images of the three child pornography photos that had been uploaded to Flickr were found in thumbnail files on the defendant's Samsung cell phone. The original child pornography photos had existed in the cell phone's download folder, and they were deleted at some unknown time. The thumbnail images were created when the original child pornography photos were deleted. Purfield's forensic analysis also revealed that the Flickr application had been deleted from the defendant's cell phone, and that the Flickr application and the Flickr website had been accessed several hundred times from the defendant's phone. The evidence does not indicate that the defendant encountered the child pornography photos inadvertently. Purfield testified that it took affirmative acts by the user to upload, download, and delete the photos and the Flickr application from the phone. The cell phone showed no signs that it had been hacked or accessed remotely

¶ 47 The credibility of Sergeant Workman and the credibility of Agent Purfield were not seriously challenged at trial. The defendant did not testify, and he did not present any witnesses or

20

evidence to refute the testimony offered by the investigating officer and the forensic analyst. The defendant argued that it was possible that someone other than the defendant created the angelsteven23 account, accessed the defendant's Samsung cell phone, uploaded child pornography to a Flickr account in the defendant's name, and at some point, deleted the photos from the defendant's cell phone, but the defendant's arguments are not supported by evidence presented at trial. The evidence and testimony presented at trial precludes any claim that the evidence was so closely balanced that the Rule 431(b) violation may have tipped the scales of justice in an otherwise close case. Accordingly, we conclude that the defendant failed to show that the evidence was closely balanced. Therefore, his procedural forfeiture is honored.

¶ 48                                    Ineffective Assistance of Counsel

¶ 49     Next, the defendant also claims he was denied a fair trial and his constitutional right to the effective assistance of counsel where his trial counsel elicited inadmissible hearsay testimony when cross-examining Sergeant Workman and where trial counsel failed to object to the lack of foundation for Workman's testimony regarding Yahoo and Flickr records. The defendant argues that trial counsel's errors were unfairly prejudicial because the evidence suggesting guilt was not overwhelming.

¶ 50     To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance was deficient, and that he was prejudiced by the alleged deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show a deficient performance, a defendant must establish that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *People v. Edwards*, 195 Ill. 2d 142, 162-63 (2001). To establish prejudice, a defendant must show there is a reasonable probability that but for counsel's unprofessional errors, the results of the proceedings would have been different. *Strickland*, 466

21

U.S. at 694; *Edwards*, 195 Ill. 2d at 163. A reasonable probability is one sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Edwards*, 195 Ill. 2d at 163. A defendant's failure to satisfy either prong of *Strickland* will defeat his ineffective assistance claim, and a court considering defendant's claim need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies. *Strickland*, 466 U.S. at 697; *Edwards*, 195 Ill. 2d at 163.

¶ 51 In this case, Sergeant Workman testified about his education, training, and experience. Workman was an investigator assigned to an internet crime against children task force. His duties included investigating child pornography and other internet crimes against children. He also worked as a network intrusion specialist and forensic computer analyst. Workman had training in computer and cell phone forensic, and he completed courses in basic scripting and social media. In addition, Workman had extracted data from hundreds of cell phones and computers during his career. Rule 702 of the Illinois Rules of Evidence allows for expert testimony if a witness has scientific, technical or specialized knowledge and experience beyond that of the average person that would assist the trier of fact to understand and evaluate. See Ill. R. Evid. 702 (eff. Jan. 1, 2011). The expertise could have been acquired through formal study or through practical experience in the relevant specialized field. See generally, *People v. Loggins*, 2019 IL App (1st) 160482, ¶¶ 81-83. Based upon this record, Workman's testimony regarding the general process of setting up an email account with a secondary or recovery email account for security purposes and his general testimony regarding the purpose of IP addresses falls within his specialized training and experience.

¶ 52    The defendant also claims that his counsel elicited and failed to object to hearsay regarding the Yahoo records. The defendant contends that no one from Yahoo, Flickr, or AT&T testified at trial to lay any foundation in support of Workman's testimony.

¶ 53    Hearsay is defined as an out-of-court statement offered in court to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Hearsay evidence is inadmissible unless the rules provide an exception. Ill. R. Evid. 802 (eff. Jan. 1, 2011). Rule 803(6) (eff. Apr. 26, 2012) of the Illinois Rule of Evidence sets forth an exception for business records kept in the ordinary course of business activity.

"(6) **Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness." Ill. R. Evid. 803(6) (eff. Apr. 26, 2012).

¶ 54    Under Illinois Rule of Evidence 803(b), a business record may be authenticated either by testimony of the custodian or other qualified witness or by certification that complies with Illinois Rule of Evidence 902(11) (eff. Jan. 1, 2011). See Ill. R. Evid. 803(6) (eff. Apr. 26, 2012); 725 ILCS 5/115-5 (West 2014). Rule 902(11) provides the proponent of the business record may provide "a written certification of its custodian or other qualified person that the record (A) was made at or near the time of the occurrence of the matters set forth by, or from information

23

transmitted by, a person with knowledge of these matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice." Under this rule, certification of a domestic record requires a written declaration under oath subject to the penalty of perjury. Ill. R. Evid. 902(11) (eff. Jan. 1, 2011). Here, the Yahoo records were provided in a flash drive and accompanied by a written declaration from the Yahoo's custodian of records. The custodian of records attested, under penalty of perjury, that the flash drive contained true and accurate copies of the data produced, that Yahoo's servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted, that the data is kept "in the ordinary course of this regularly conducted activity and was made by regularly conducted activity as a regular practice."

¶ 55    Moreover, the Yahoo records were discussed during defense counsel's cross-examination of Sergeant Workman. Defense counsel questioned Workman about the Yahoo records to show that the three images of child pornography had not been uploaded from the IP address at defendant's residence. This testimony served to support the defendant's theory that it was possible that the images were uploaded from an unknown location by someone other than the defendant. It is clear from the record that defense counsel conducted a thorough review of the information provided by Yahoo and that counsel decided to present these records to the jury to demonstrate deficiencies in the State's evidence. *People v. Walker*, 2021 IL App (4th) 190073, ¶¶ 49-50. In this case, the defendant did not meet his burden to show that trial counsel's strategy was objectively unreasonable. Therefore, he failed to satisfy the deficient performance prong of his ineffective assistance of counsel claim.

24

¶ 57    The defendant contends that at the *Krankel* inquiry, he demonstrated possible neglect of his case by his trial counsel, and he seeks a remand to the trial court for the appointment of *Krankel* counsel to investigate and litigate his ineffective assistance of counsel claims. The defendant claims that he demonstrated possible neglect in that his trial counsel had a conflict of interest and violated the attorney-client privilege by communicating with the defendant's wife and counseling her about a divorce and that trial counsel failed to make a timely request for funds to hire an expert witness. Alternatively, the defendant claims that the *Krankel* inquiry was inadequate because the trial court limited the inquiry to the allegations made by the defendant in his handwritten letter of April 11, 2017.

¶ 58    The preliminary inquiry under *Krankel* is triggered when a defendant raises a *pro se* claim of ineffective assistance of trial counsel. *People v. Jackson*, 2020 IL 124112, ¶ 96; *People v. Ayres*, 2017 IL 120071, ¶ 11. The goal of the preliminary inquiry is to facilitate the trial court's full consideration of a defendant's *pro se* allegations of ineffective assistance of counsel and thereby potentially limit issues on appeal. *Ayres*, 2017 IL 120071, ¶ 13. When a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel, the trial court is required to conduct an adequate inquiry into the factual basis of the defendant's claim. *Ayres*, 2017 IL 120071, ¶ 11. An adequate inquiry is one that is sufficient to determine the factual basis of the claims. *Ayres*, 2017 IL 120071, ¶ 11. During this inquiry, the trial court is permitted to question defense counsel about the facts and circumstances surrounding the defendant's allegations, to discuss the allegations with the defendant, and to base its evaluation of the defendant's *pro se* allegation of ineffective assistance of counsel on its knowledge of defense counsel's performance at trial. *Ayres*, 2017 IL 120071, ¶ 12. If the trial court determines that the claim lacks merit or pertains only to matters of trial

strategy, then the trial court need not appoint new counsel and may deny the *pro se* motion. *People v. Roddis*, 2020 IL 124352, ¶ 35; *Ayres*, 2017 IL 120071, ¶ 11. If the trial court's inquiry into the defendant claims reveals that the allegations are "conclusory, misleading, or legally immaterial" or do " 'not bring to the trial court's attention a colorable claim of ineffective assistance of counsel,' " the trial court may be excused from further inquiry. *People v. Burks*, 343 Ill. App. 3d 765, 774 (2003) (quoting *People v. Johnson*, 159 Ill. 2d 97, 126 (1994)). If, however, the allegations show possible neglect of the case, new counsel should be appointed to investigate the claims and present them at a hearing. *Roddis*, 2020 IL 124352, ¶¶ 35-36.

¶ 59     The applicable standard of review depends on whether the trial court decided the merits of the defendant's *pro se* posttrial claims of ineffective assistance of counsel. *Jackson*, 2020 IL 124112, ¶ 98. Whether the trial court conducted an adequate *Krankel* preliminary inquiry is a question of law that is reviewed *de novo*. *Jackson*, 2020 IL 124112, ¶ 98. If the trial court conducted an adequate preliminary inquiry and reached a determination on the merits of the defendant's *Krankel* motion, the reviewing court will reverse only if the trial court's action was manifestly erroneous meaning that the error is clearly evident, plain, and indisputable. *Jackson*, 2020 IL 124114, ¶ 98.

¶ 60     In this case, the trial court conducted a preliminary inquiry into the defendant's *pro se* claims of ineffective assistance of counsel. During the inquiry, the trial court questioned the defendant and his former trial counsel, Robert Bas, about the allegations of ineffective assistance of counsel contained in the defendant's letter filed April 11, 2017. In the letter, the defendant claimed that (a) Bas advised the defendant's wife regarding her divorce while representing the defendant in the case at bar, (b) Bas would not allow the defendant to testify in his defense, (c) Bas failed to call certain witnesses to impeach Angel Kopp's testimony, (d) Bas refused the

26

defendant's request for a polygraph, and (e) Bas did not secure an independent expert for trial. The trial court discussed each of these claims with the defendant during the hearing. However, the defendant has raised only two of the five claims on appeal. The defendant contends that he demonstrated possible neglect of his case based upon trial counsel's alleged conflict of interest and breach of attorney-client privilege and trial counsel's failure to secure an independent expert.

¶ 61    The record indicates that the trial court first asked the defendant to talk about the alleged conflict of interest and breach of client confidentiality. The defendant claimed that Bas had been advising the defendant's wife about a divorce at the same time he was representing the defendant at trial. The defendant asserted that Bas prepared a power of attorney that gave his wife control over his money and property and that Bas presented the power of attorney to the defendant, and that the defendant refused to sign it. The defendant also asserted that his wife paid $150 to Bas for the service. The defendant also claimed that Bas came to see the defendant just before the trial and told the defendant that it was best that his wife not continue with the divorce because that way she has control over the defendant's monies and business. The trial court questioned the defendant about the source of the defendant's knowledge. The defendant indicated that he found out that Bas had been advising his wife when Bas presented the power of attorney. The defendant stated he had not spoken to his wife prior to being presented with the power of attorney, but he talked with her afterward and confirmed that Bas had been counseling her. In addition, the defendant asserted that on the Friday before trial, Bas informed the defendant of a plea offer, and that Bas became upset when defendant rejected the deal, calling the defendant an "idiot." The defendant asserted that Bas called the defendant's wife and asked her to get the defendant to take the deal. The defendant stated that he did not want Bas to communicate with his wife about his case "because it's none of her business anymore because of the divorce." During the inquiry, the trial court pointed out that the

27

defendant's wife was a witness for the State. The defendant agreed that it would be okay for his counsel to interview her about her testimony, but counsel had no business talking to her about a divorce and controlling his money while he was in prison. The record also indicated that the defendant's wife was on the defendant's witness list. The trial court also asked the defendant about the defendant's contention that his former counsel failed to retain an expert witness. The defendant told the court that he wanted to get an expert and that he paid his lawyer $3,500 to hire an expert. Then, just before the trial, Bas informed the defendant that the court denied the defendant's request for an expert.

¶ 62    The trial court asked the defendant whether there were any other specific issues other than those that the court had identified in the letter that the defendant wanted to discuss. The court continued, "you're the one that wrote the letter. So I want you to tell me if there's anything more that you want me to at least address with you." The defendant indicated that he did not find out until after the trial that Bas had not talked to any of the defendant's witnesses. The defendant also stated that Bas mentioned that the trial court told Bas he was doing an excellent job, and that Bas represented that he spoke to a "female jurist" who commented that we had the case won. According to the defendant, Bas stated that he did not want the defendant to testify and he did not want to put on any witnesses.

¶ 63    Before permitting Bas to address the defendant's allegations, the trial court noted that it had not placed the defendant under oath. After the defendant was duly sworn, the trial court asked whether the defendant told the truth. The defendant answered, "Yes."

¶ 64    Attorney Bas was duly sworn and permitted to address the court. Bas stated that he did not represent the defendant's wife regarding the initiation of divorce proceedings. When the topic arose, Bas told the defendant's wife that he represented the defendant and that she needed to seek

28

independent counsel. Bas stated that he did not advise the defendant's wife to file for divorce or to hold off on the divorce. Bas noted that the court records reflected that the defendant's wife filed a *pro se* petition for dissolution. Bas also stated that he did not represent the defendant's wife regarding the execution of a power of attorney, and he denied receiving $150 for preparing a power of attorney. Bas indicated that his records showed that he received a $10,000 retainer in October 2016 and that he later received a $3,000 check to retain an expert.

¶ 65    Bas also addressed the matter of an expert witness. Bas stated that when he took over the case, he had recommended, on more than one occasion, that the defense retain an expert to review the results of the forensic analysis of the defendant's cell phone. Bas stated the defendant adamantly refused and had not changed his mind until days before the trial was to begin. Bas recalled that the defendant indicated that they did not have the money, that his wife was getting a loan from the defendant's father-in-law, and he did not want to put his father-in-law out. Bas indicated that the issue of an expert arose again after the discussions of plea deal. Bas moved to continue the trial setting to retain an expert, but his motion was apparently denied as untimely. Bas returned the $3,000 check. Bas stated that he did not call the defendant an "idiot." Bas advised that if the defendant rejected the plea offer and was convicted, the defendant was likely looking at a prison sentence far in excess of the State's offer. Additionally, Bas stated that in his experience, it was not uncommon for trial judges to tell attorneys that they are doing a good job. Bas understood such comments to mean that counsel kept the case moving along in an orderly fashion. Finally, Bas addressed the defendant's claim that a juror had spoken to Bas and told Bas they had the case won. Bas indicated that there was no such conversation.

¶ 66    On May 26, 2022, the trial court issued an order denying the defendant's *pro se* claims of ineffective assistance of counsel.

29

"The Court considered both the facts and the legal merits of the Defendant's *pro se* claim of ineffective assistance of counsel. In considering the entire record before it, the Defendant's *pro se* letter of April 11, 2017, and having now considered the testimony of the Defendant and his former attorney as presented on January 21, 2022, the Court finds no factual basis for the Defendant's claim or that his claim raises purely matter of trial strategy. As such, the Court finds that no further evidentiary hearing is warranted."

¶ 67 On appeal, the defendant claims that the *Krankel* inquiry was inadequate because the trial court limited the inquiry to the allegations made by the defendant in his handwritten letter of April 11, 2017. We disagree. The transcript of the proceedings shows that the trial court discussed each individual claim with the defendant and asked the defendant about the factual basis for each claim. The court also asked the defendant whether there were any other specific issues that the defendant wanted to address. Based upon our review of the transcript of the *Krankel* proceedings, we find that the trial court conducted an adequate inquiry into the defendant's claims of ineffective assistance of counsel and that the court did not limit the inquiry to the claims raised in defendant's letter.

¶ 68 The defendant also claims he demonstrated arguable neglect because Bas had a conflict of interest and breached attorney-client privilege. We disagree. The transcript of proceedings reveals that the trial court made significant efforts to probe these allegations. When the defendant addressed the court, he seemed predominantly focused on his allegation that Bas had given legal advice to the defendant's wife regarding a divorce and had prepared a power of attorney for his wife. The defendant asserted that Bas called the defendant an "idiot" for refusing a plea deal. The defendant asserted that he learned from his wife that Bas told her to get the defendant to take the deal, and that he told Bas not to communicate with his wife about his case because it was none of

30

her business anymore because of the divorce. The defendant did not include specific, cogent allegations regarding counsel's alleged disclosures of confidential communications to the defendant's wife during the inquiry or in his letter. Bas refuted the defendant's assertions. He stated, under oath, that he did not, at any time, represent the defendant's wife or counsel her about a divorce or a power of attorney. Bas stated that he represented the defendant and that she should seek independent counsel, and he pointed to court records which showed that the defendant's wife filed a *pro se* petition for dissolution.

¶ 69 In this case, the trial court presided over all phases of the trial and the court was familiar with the history of the case and with defense counsel's performance at trial. The trial court considered the merits of the defendant's claim in its entirety and determined that there was no factual or legal basis to support the claim. After reviewing the entire record, we conclude that the trial court's finding was not manifestly erroneous.

¶ 70 Next, we consider the matter of the expert witness. Shortly after Bas took over the defense of the defendant's case, Bas advised his client that the defense should hire an expert to refute the State's forensic analysis. The defendant refused and gave as reasons that they did not have the money, and he did not want to put his father-in-law out by asking for a loan. After plea negotiations failed, and just days before trial, the defendant decided that he wanted his counsel to secure an expert and the defendant tendered $3,000 for an expert. As a result, Bas requested a continuance to consult with an expert, but the trial court denied the motion, apparently because the request was made just days before the trial was scheduled to begin. The record does not demonstrate that an expert was not obtained because of neglect or a lack of awareness or neglect by Bas. Rather, the record indicates that the defendant did not agree to an expert until a few days before his trial was

31

scheduled to begin. Thus, the trial court's finding that defendant did not demonstrate arguable neglect by defense counsel was not manifestly erroneous.

¶ 71                                                  III. CONCLUSION

¶ 72     After reviewing the record, we find that the trial court conducted an adequate *Krankel* inquiry into the defendant's *pro se* posttrial claims of ineffective assistance of counsel, and that the trial court's conclusion that the defendant did not demonstrate arguable neglect of the defendant's case was not manifestly erroneous. The State presented sufficient evidence to prove the defendant guilty beyond a reasonable doubt of three counts of child pornography. The defendant failed to establish that his trial counsel provided ineffective assistance in eliciting inadmissible hearsay when cross-examining an investigator about information provided by internet providers and failing to object to the lack of foundation for the investigator's testimony. The defendant failed to establish that the evidence was so closely balanced that the trial court's error in questioning the jurors about their understanding and acceptance of the *Zehr* principles constituted plain error under the first prong of the plain-error doctrine. Accordingly, the judgment is affirmed.

¶ 73     Affirmed.